## UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

KARL JOBST,

                Plaintiff,

    v.

WILLIAM JAMES MITCHELL,

                Defendant.

Case No. 0:26-cv-60997-DSW

**JURY DEMANDED**

FILED BY _____ D.C.

MAY 0 6 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

### FIRST AMENDED COMPLAINT

Plaintiff Karl Jobst files this First Amended Complaint against Defendant William James Mitchell for defamation per se, unauthorized publication of name or likeness and intentional infliction of emotional distress.

### PARTIES

1. Plaintiff Karl Jobst ("Jobst") is an individual residing in Brisbane, Australia. Jobst operates a widely viewed YouTube channel with over 1 million subscribers and substantial viewership, from which Jobst derives income from that audience through advertising, sponsorships, and platform monetization. Jobst's reputation for credibility and trustworthiness is a central component of that business, and damage to that reputation directly impairs his ability to generate revenue and maintain audience engagement.

2. Defendant William James Mitchell ("Mitchell") is an individual residing in Weston, Florida. Mitchell has publicly held himself out as a prominent figure in the competitive gaming community and has claimed widespread recognition for his video game records and appearances in gaming related media. Mitchell promotes commercial products

1

his X post. In response to Mitchell's republication, multiple readers replied by stating that Jobst had engaged in "fraud," "bankruptcy fraud," and other unlawful conduct, reflecting how Mitchell's post conveyed and reinforced an allegation of criminal wrongdoing to its audience.

10.     The Reddit post's assertions were false. The conversation referenced in the post contained no statement in which Jobst boasted about or admitted to moving assets to his wife, and Jobst did not transfer assets to his wife to defeat creditors or engage in any unlawful conduct in connection with his bankruptcy.

11.     On June 6, 2025, the bankruptcy trustee issued an Initial Notice and Report to Creditors stating that the trustees' investigations had identified **no offences** in relation to Jobst's affairs. The report was sent to all creditors, including Mitchell.

### 6.1.  Offences

Information pertaining to types of offences a bankrupt could commit are provided in the **attached information sheet for creditors.**

To date, our investigations have not identified any offence under the Act by the Bankrupt. Should any such offence be identified, they will be reported to AFSA accordingly.

12.     On 24 June 2025, Mitchell posted on his X account: "Karl Jobst has engaged in serious illegal activity before and during this bankruptcy process."

**Billy Mitchell** ✅
@BillyPacMan

Karl Jobst has engaged in serious illegal activity before and during this bankruptcy process. I may take him back to court.

10:11 PM · Jun 24, 2025 · **57K** Views

💬 94          🔁 39          ♡ 1.2K          🔖 38          ↑

3

13. The statement was false. Jobst did not engage in any illegal activity before or during the bankruptcy process. As described above, the bankruptcy trustee had already reported on June 6, 2025 that the trustees' investigations had identified no offences in relation to Jobst's affairs. Furthermore, prior to bankruptcy, Jobst provided Mitchell with a detailed disclosure of his financial position and offered to resolve the judgment for $300,000, an amount far exceeding the value ultimately recoverable through bankruptcy. Jobst further advised that, absent acceptance of the offer, bankruptcy would follow. Mitchell rejected the offer with knowledge of Jobst's financial position.

14. After seeing Mitchell's X post, Jobst e-mailed the bankruptcy trustee on June 25, 2025 asking whether he had engaged in any illegal conduct during the bankruptcy process.

15. On June 26, 2025, the bankruptcy trustee responded by e-mail stating that the trustee was "not aware of the serious illegal activity" referenced by Mitchell.

16. On June 26, 2025, the bankruptcy trustees also wrote to Mitchell's solicitor regarding the same X post. The trustees requested that Mitchell provide information or documentation substantiating his assertion that Jobst had engaged in "serious illegal activity" so that the allegation could be investigated as part of the administration of the bankrupt estate.

17. No substantiation of the allegation was ever provided. In later correspondence, a supervisor from the trustee's office confirmed that no response had been received to the trustees' request for information or documentation supporting Mitchell's assertion of "serious illegal activity."

18. On June 29, 2025, Mitchell posted on X: "Karl Jobst complained about one of my tweets to the bankruptcy officer. Imagine publicly attacking someone for four years just to privately whine like a cry baby," accompanied by an image depicting Jobst being hanged,

4

in which Mitchell is depicted as carrying out the act. In a reply to the same post, Mitchell

promoted his commercial website "RickeysSauce.com" using the discount code "CRY

BABY."



**Billy Mitchell** ✔
@BillyPacMan

Karl Jobst complained about one of my tweets to the bankruptcy officer. Imagine publicly attacking someone for four years just to privately whine like a cry baby.

Jobst is a serious contender for Lolcow of the year. Even iDubbbz wouldn't have done this.

WASTED HIS LIFE

The Saddest Albino Of All Time

9:51 PM · Jun 29, 2025 · **5,259** Views

💬 25        ↻ 22        ♡ 370        🔖 16        ↑

Post your reply                                    Reply

**Billy Mitchell** ✔ @BillyPacMan · 2h
FLASH SALE: RickeysSauce.com discount code "CRY BABY" returns for 15% off! Valid thru July 6!

5

19.     On August 11, 2025, Jobst published a video (the "August 11 Video") on YouTube titled "My Final Lawsuit Update," in which Jobst publicly addressed and denied Mitchell's allegations that he had engaged in illegal activity in connection with the bankruptcy process.

20.     On December 4, 2025, Mitchell broadcast a livestream on YouTube (the "December 4 Livestream") in which he again commented on Jobst and the bankruptcy proceedings. During the livestream, Mitchell stated, in reference to Jobst: "You know, he's claiming that, you know, he's not getting any money. Of course he's claiming that. It's like somebody evading taxes." During the same livestream, a viewer message appeared stating "Karl is lying to the trustee..." Mitchell read the comment aloud and responded in agreeance, "Yeah."

21.     During the December 4 Livestream, a caller asked: "How do you feel about Karl giving everything to his wife so that he doesn't have to pay you?" Mitchell responded: "That's not what happened at all. If he did that, he'd go to jail." Mitchell's statement directly contradicted the allegation he had previously republished and endorsed on May 18, 2025 that Jobst had moved assets to his wife to avoid paying creditors. Despite Mitchell's statement that "that's not what happened at all," Mitchell did not retract or correct his prior republication of the allegation.

22.     Following Mitchell's December 4, 2025 livestream statements, on or about December 15, 2025, the bankruptcy trustee again contacted Mitchell's solicitor and requested that Mitchell provide any information or documents supporting allegations of misconduct by Jobst. Mitchell did not provide any substantiating information. On February 2, 2026, a supervisor from the trustee's office confirmed by email that no response had been received from Mitchell's solicitor to the trustee's request for information.

**Statements Alleging Fraudulent Fundraising Through a 2022 GoFundMe Campaign**

23.     On June 3, 2025, Mitchell published a video to YouTube titled: "A Statement From Billy Mitchell: Karl Jobst (Part 1/2)." (The "June 3 Video") In that video, Mitchell made a series of statements to the effect that Jobst had created a GoFundMe campaign on false premises, had misled the public as to the existence of legal proceedings, and had done so with knowledge and intent in order to obtain $200,000 for personal benefit.

24.     Referring to Jobst in the June 3 Video, Mitchell stated: "He needed money, and he needed money now." Mitchell would then address Jobst directly by saying: "You created a GoFundMe campaign with the **knowledge and intent** to fund the existing lawsuit on **false premises**. Period. End of paragraph." Mitchell also specified the exact amount of the fraud, saying: "So apparently the only time Mr Jobst ever believes me is after six months pass without follow up and he **stands to gain $200,000 from his audience**." Throughout the video, Mitchell presents these statements as part of a broader accusation that Jobst engaged in a deliberate scheme to deceive viewers into funding the GoFundMe campaign. These statements conveyed that Jobst had committed fraud by knowingly soliciting money through deception for personal gain.

25.     The foregoing statements were false. On 27 October 2022, Jobst emailed his solicitor at Mills Oakley a draft script for an upcoming video, which included the explanation of the GoFundMe campaign and the underlying litigation. On 28 October 2022, Jobst's solicitor responded, confirming that they had reviewed the draft and identifying statements of concern, including statements that were clearly inaccurate, and recommending revisions to mitigate legal risk. Jobst revised the script in response to that feedback prior to publication. The GoFundMe campaign was subsequently created on 4 November 2022.

26.     The GoFundMe accurately described both the reason for its existence and the intended use of the funds, including that: (1) Mitchell had sued Jobst for defamation in 2021,

7

(2) Mitchell's solicitor had provided Jobst with a legal complaint and stated that they would proceed with that complaint unless the existing proceeding resolved, and (3) Mitchell was threatening additional legal action. Funds raised through the GoFundMe were used for legal fees incurred in defending the proceedings, which substantially exceeded the amount raised.

27.    In the June 3 Video, Mitchell even admitted that his lawyers had indeed emailed Jobst's lawyers a copy of a legal complaint and had said he would proceed with that complaint unless the existing lawsuit resolved at mediation, which it did not. Mitchell further stated in the video that he later chose not to begin a second lawsuit, that no further developments occurred after the mediation, but that Jobst "**should have known**" that no second lawsuit was coming.

28.    However, at the time of the creation of the GoFundMe campaign, Mitchell's stated position had never been withdrawn. Mitchell's later assertion that Jobst "should have known" that no further proceedings would be commenced is inconsistent with the contemporaneous communications between the parties. Jobst created the GoFundMe in direct response to those communications.

29.    This was not news to Mitchell. On 7 November 2022, Mitchell's solicitor wrote to Jobst's solicitor querying why Jobst was "crowdfunding upon the basis that [Mitchell] has instituted a second defamation claim." In response, on 9 November 2022, Jobst's solicitor confirmed that proceedings had been sent to Jobst and that Mitchell had not withdrawn the threat of commencing those proceedings. These communications demonstrate that Mitchell, through his solicitor, was aware at the time of both the GoFundMe campaign and the basis upon which it had been created.

30.    Mitchell's assertions in the June 3 Video were also internally inconsistent. While acknowledging that his lawyers had sent a further legal complaint and indicated it would be filed, Mitchell nevertheless maintained that no second lawsuit was forthcoming and

that Jobst "obviously knew" this to be the case. Mitchell further stated that Jobst, "at the very least," was "unsure if it ever was," while still accusing Jobst of creating the GoFundMe with "knowledge and intent" to fundraise on "false premises." These conflicting positions cannot be reconciled and further demonstrate that Mitchell's statements were not grounded in the contemporaneous facts known to him.

31.     The August 11 Video also publicly addressed and denied Mitchell's allegations that Jobst had engaged in fraudulent fundraising and illegal conduct. In that video, Jobst explained the basis for the GoFundMe, including the existence of ongoing and threatened litigation, communications from Mitchell's solicitor, and the use of funds for legal expenses. The video therefore constituted a direct and detailed rebuttal of the allegations that Jobst had acted with "knowledge and intent" to fundraise on false premises or had otherwise engaged in fraud.

32.     Following publication of the August 11 Video, Mitchell continued to publish statements repeating the same allegations, including an August 12, 2025 X Post, stating that Jobst had: "...LIED FOR FOUR YEARS, SCAMMED $200,000..." despite the public availability of Jobst's explanation and denial in the August 11 Video.

33.     Mitchell's publication of these allegations following his acknowledged awareness of the underlying facts and Jobst's public rebuttal demonstrate that his statements were not the product of mistake, confusion, or good-faith belief, but were made with knowledge of their falsity or with reckless disregard for the truth.

34.     On August 27, 2025, during a YouTube livestream (the "August 27 Livestream"), Mitchell stated, in reference to Jobst: "How do you feel about the fact? How do you feel about how he misrepresented the lawsuits with an 'S' to take advantage of his audience? Now, some of them were taken advantage of because they were stupid. Some were taken advantage of just because they weren't familiar with the situation and didn't really

9

care... I think that's lousy. I think if I did that, I'd probably be in jail." Mitchell also stated that individuals who contributed to the GoFundMe had been "lied to," "deceived," and were "victims." These statements, especially Mitchell's reference to the consequent of imprisonment, further support the inference that Mitchell's allegations were of a criminal nature.

35.    During the August 27 Livestream, Mitchell also denied that he had acknowledged the existence of a further complaint or proceedings, stating "No, I didn't acknowledge that," despite having previously admitted in the June 3 Video that his solicitor had provided a draft complaint and indicated it would be filed. Mitchell also stated that the relevant materials were "available for public consumption in the Australian courts." In fact, the draft complaint he had previously referenced was never filed and was not publicly available through any court record, and any Concerns Notices were not publicly available through any court record.

**Statement Alleging Fraudulent Obtaining and Misappropriation of Funds Through a 2021 GoFundMe Campaign**

36.    During the November 12 Livestream, Mitchell discussed a GoFundMe campaign created by Jobst in May 2021 to raise funds for third parties, including individuals who had been sued by Mitchell, for the purpose of covering their legal expenses. The campaign raised approximately $55,000.

37.    In that livestream, Mitchell stated: "If this doesn't piss you off, you're not paying attention. He said he needed money to defend this. And he allowed everyone to believe, he worked hard for everyone to believe that it was about cheating in order to get people to donate money... He had $50,000 in one GoFundMe, 55, I think, and $200,000 in another GoFundMe. So, publicly there was $250,000 donated... He acknowledged that Notch

10

gave him $300,000. So the $250,000 public dollars… from the two different GoFundMes and $300,000 is $550,000… let's forget 550. Let's just say 500. It's an easier number… he deceptively took $500,000 from you… If that doesn't piss you off, I can't help you."

38.     This statement conveyed that Jobst had wrongfully obtained funds from the 2021 GoFundMe campaign and had misappropriated money intended for third parties, including by deceptively taking or retaining those funds for his own benefit. The statement therefore imputes fraudulent conduct, theft, and dishonest misappropriation of funds.

39.     This statement is false. The funds raised through the May 2021 GoFundMe campaign were not obtained through deception and funds were not retained for personal use and were held only for the purpose of disbursement to beneficiaries in accordance with the stated terms. The funds were raised for the benefit of third parties and were in fact transferred for that purpose, including to David Race, who was listed as a beneficiary on the GoFundMe campaign page.

40.     On 20 September, 2024, David Race testified in court that he received the funds raised through the May 2021 GoFundMe campaign as intended, consistent with the campaign's stated purpose of supporting third parties facing legal expenses. This testimony confirms that the funds were not retained or misappropriated by Jobst.

Okay. Thank you. And was all of that money – that 55 thousand-odd dollars – was that provided to you in defence of your claim of – from Mr Mitchell?---I would say probably most of it was. The – the initial – at least, in my perspective – or my understanding is that this GoFundMe was set up to help victims – not just me – but it ends up that Jeremy Young and Jeff Harrist, they were never served. And so – uh – my understanding is that – uh – most of that money – uh – if not close to all of it was – uh – sent to help me in the defence against Mitchell's base – Mr Mitchell's baseless case against me.

All right. Do you feel like you owe anything Mr Jobst – to Mr Jobst for him doing that for you?---No. Not at all. Uh – actually, it wasn't Mr Jobst. It was the community that basically donated to this thing. So if there's any thanks to be given, it's the very – you know, to be very grateful to all the people that donated on the – for this Go Fund Me.

11

41. Mitchell knew the truth about the funds as he was present in the courtroom on September 20, 2024 when David Race gave sworn testimony regarding the May 2021 GoFundMe campaign. Despite this, Mitchell later asserted that Jobst had deceptively taken those funds for his own benefit. Mitchell's statement was therefore not the product of mistake or confusion but was made with knowledge of its falsity.

42. Notwithstanding Mitchell's knowledge of the eventual use of the funds, his stated premise that Jobst initiated the GoFundMe campaign because he needed money for his own defense could not have been true, as the GoFundMe was launched months before Jobst was sued by Mitchell.

**Statement Alleging Deceptive Taking of $300,000 from Markus Persson (Notch)**

43. The November 12 Livestream contained a further sting, that Jobst had deceptively taken $300,000 from one of the most prominent and influential figures in the videogaming community.

44. Markus Persson ("Notch") is the creator of Minecraft, widely recognized as the best-selling video game of all time. On May 27, 2021, prior to the commencement of any litigation against Jobst, Notch publicly stated to Jobst on X: "If you ever need help dealing with Mitchell, let me know. I'll pay your legal fees any day of the week."

45. In June 2021, following his public offer, Notch confirmed directly to Jobst that he was willing to provide financial support for legal expenses arising from any dispute with Mitchell, and explained that his motivation was to assist in addressing that conduct and the anticipated cost burden. Notch then indicated that the practical handling of any such support would be coordinated through his representatives and directed Jobst to communicate with his manager for that purpose.

46.     In June 2021 and continuing thereafter, following Notch's direction, Jobst was contacted by Notch's representative, who confirmed that Notch intended to fund Jobst's legal expenses and requested documentation relating to the dispute. Jobst provided correspondences, pleadings and invoices, which were reviewed by Notch's representative and legal advisors, after which Notch's representatives approved the funding and arranged for payment of legal expenses, including by direct payment of invoices.

**From:** Lisa Prick▮▮▮▮▮▮▮▮▮▮▮
**Sent:** Thursday, July 29, 2021 7:09 PM
**To:** KARL Jobst ◄▮▮▮▮▮▮▮▮▮▮►
**Subject:** Re: Notch

Hi again,

Both me and our lawyer have looked through all the documents you sent and everything looks good.
I think we would actually prefer to pay it to an Australian account if you don't mind?
If that works for you, please send me your bank details and I'll make sure you'll get your money as promised :)

47.     Between 2021 and 2024, Notch provided approximately $300,000 in financial support to assist with Jobst's legal defense.

48.     On April 25, 2025, Notch published a post on X stating: "People turning on Karl Jobs[t] like they got bored of being part of the good guys. Is it possible the real problem here is the cheating narcissistic pathological liar and not the up until this moment trusted community member?"

49.     In response to Notch's post, on April 25, 2025, Mitchell published a quote post stating: "People turning on Karl Jobs[t] like they lost hundreds of thousands to him like I did." By misrepresenting and altering Persson's supportive post, Mitchell conveyed the false impression that Jobst had caused financial loss to Notch and others and had wrongfully obtained or retained funds, even though Notch voluntarily and knowingly provided support.



50.     Mitchell's statements during his November 12 Livestream referenced funds received by Jobst from Notch, with Mitchell stating in reference to Jobst: "He acknowledged that Notch gave him $300,000… So… He deceptively took $500,000 from you."

51.     This statement conveyed that Jobst had also deceptively obtained $300,000 from Notch. The statement therefore imputes fraud, theft, or dishonest conduct in relation to the funds provided by Notch.

52.     This statement is false. The funds provided by Notch were not obtained through deception and were not wrongfully taken or retained by Jobst. As stated previously, the funds were offered voluntarily and with full knowledge of their purpose. Prior to any funds being provided, Notch and his representatives were given all information, including all legal documents regarding the legal matters for which support was sought, and the funding was reviewed and approved on that basis.

14

53.     Notch's April 25, 2025 X post expressed continued support for Jobst and contradicted any suggestion that Notch considered himself deceived, tricked, misled, or victimized. Mitchell responded to that post, confirming his awareness of Notch's position. In fact, Mitchell even mocked Notch's continued support for Jobst. Despite that knowledge, and without any factual basis concerning the private funding arrangement, Mitchell still claimed that Jobst had deceptively taken Notch's money. Mitchell therefore made the statement with reckless disregard for the truth.

**Statements Alleging Criminal Fraud of More Than Half a Million Dollars**

54.     Beginning in or about August 2025, Mitchell escalated his prior allegations by asserting that Jobst had engaged in large scale fraud involving more than half a million dollars. These statements did not identify any specific transaction or conduct but instead asserted as fact that Jobst had fraudulently taken over $500,000 from his audience.

55.     During the August 27 Livestream, a viewer message appeared stating "you'd have to be low IQ to side with Jobst, after he scammed his viewers out of 200,000," to which Mitchell responded: "He actually scammed his viewers out of more than $500,000. So there, I'm telling you something that isn't reported. More than half a million dollars."

56.     On October 29, 2025, during a YouTube livestream (the "October 29 Livestream"), Mitchell stated in reference to Jobst: "He said that so you believe him. The guy who took over half a million dollars fraudulently from his listeners."

57.     During the December 4 Livestream, Mitchell stated, referring to Jobst: "He took over half a million dollars of people's money. Okay. Based upon, let me be kind, based upon the falsehood. Yes, he took over a half a million dollars. I mean, some people argue that you should go to jail for doing something like that... if I did that, I would go to jail..."

15

58.     By attributing the taking of money based upon a "falsehood," Mitchell expressly framed the alleged conduct as deceptive rather than legitimate. Mitchell further invoked and personally endorsed the prospect of criminal punishment by stating that if he engaged in such conduct he "would go to jail," thereby reinforcing the allegation that Jobst had engaged in serious criminal wrongdoing.

59.     Mitchell's repeated defamatory statements are false. Jobst did not obtain any funds from members of the public through fraud, deception, or any unlawful conduct. No individual transaction, nor any combination of transactions, constitutes fraud or deceptive conduct, and no facts exist that could support an assertion that Jobst obtained more than half a million dollars through fraudulent means. The statements assert, without any factual basis, that Jobst engaged in large scale criminal fraud.

60.     Mitchell knew, or recklessly disregarded, that he had no factual basis to accuse Jobst of large-scale fraud involving more than half a million dollars. Mitchell did not identify any specific transaction, donor, victim, document, or act of deception supporting the accusation. Instead, after repeatedly publishing and being confronted with the falsity of narrower fraud allegations, Mitchell escalated those allegations into a broader accusation that Jobst had fraudulently taken more than half a million dollars from his audience.

## UNAUTHORIZED PUBLICATION OF NAME AND LIKENESS

61.     Beginning on May 10, 2025, and continuing thereafter, Mitchell engaged in a course of conduct using Jobst's name and likeness in connection with the promotion and sale of commercial products.

62.     Mitchell used images and video footage depicting Jobst in connection with the promotion of commercial products, including posts directing users to rickeyssauce.com.

16

63. Mitchell used Jobst's name in promotional discount codes, including "JOBST," "KARL LOST," and "KARL LOBST," and did so in direct responses to Jobst's own posts.

64. Mitchell republished statements made by Jobst and used those statements in posts promoting commercial products, including by pairing them with links and discount codes intended to drive sales.

65. Beginning at least in July 2025, Mitchell offered for sale on rickeyssauce.com a product titled "Signed Billy Mitchell Red Joystick Headshot," which prominently featured Jobst's name and likeness as part of the product itself. The product contained a photoshopped image using Jobst's face, and the sales page referenced Jobst by his full name for promotional purposes.

66. On April 3, 2026, Mitchell further promoted that product by posting that it had "officially sold out," that it might return "by popular demand."

67. These uses of Jobst's name and likeness were made for commercial purposes, including to advertise, promote, and sell products to the public, and were undertaken without Jobst's consent. Mitchell's use of Jobst's identity was not incidental but formed part of a broader effort to attract attention, drive sales, and commercially benefit from the association with Jobst, and was undertaken willfully.

## MITCHELL'S MALICE AND PATTERN OF CONDUCT

68. In addition to the foregoing allegations, Mitchell engaged in further conduct evidencing malice and demonstrating that his statements were not made for the purpose of conveying factual information, but as part of a broader effort to cause both reputational and emotional damage to Jobst.

17

69.     Mitchell republished statements advocating harm to Jobst's livelihood, including an August 15, 2025 X post promoting an opportunity to "cripple Jobst's future income."

⟲ **Billy Mitchell reposted**

**Legal Mindset** ✓ @TheLegalMindset · Aug 15, 2025       ⌀  ···
Doing some research with an Australian lawyer colleague on Jobst v. Mitchell, we still need to collect more information but at this point it seems that while Jobst may not have violated Australian law in some ways, there is a HUGE opening that @BillyPacMan may be able to attack that could cripple Jobst's future income

💬 28          ⟲ 20          ♡ 369          ᐧᐧᐧ 26K          🔖  ⬆

70.     During the August 27 Livestream, in response to a viewer stating, in reference to Jobst: "I fully appreciated that you busted his entire career to pieces", Mitchell read the message aloud and replied: "You ain't seen nothing yet." After another viewer commented: "Karl's voice is shaking in his recent video. He's on the ropes badly," Mitchell again read the comment aloud and replied: "You ain't seen nothing yet."

71.     Mitchell further made statements referencing Jobst's assets and financial position, including comments suggesting that Jobst's property or equity would be transferred to him, and invoked ongoing litigation in a manner indicating pressure rather than legitimate dispute resolution. These statements included the following X posts:

a. On May 14, 2025, Mitchell stated: "Karl Jobst has officially filed for bankruptcy." Mitchell then promoted rickeyssauce.com with the discount code "BANKRUPT" for 10% off.

b. On May 20, 2025, Mitchell stated: "Karl Jobst is now on welfare." Mitchell then promoted rickeyssauce.com with the discount codes "BROKIE" and "BANKRUPT" for 10% off.

    c. On May 25, 2025, Mitchell posted an image purporting to show Jobst stating that Mitchell had obtained him a job at McDonald's and that Jobst would provide customers with Rickey's hot sauce.

    d. On June 20, 2025, Mitchell tagged Jobst and stated: "Thanks @karljobstgaming. I'll be closing on this one soon. Can't wait for the equity in your home to arrive in my bank account." Mitchell then promoted rickeyssauce.com with the discount code "BANKRUPT" for 10% off.

    e. On July 12, 2025, Mitchell stated: "The lawsuits will continue until morale improves." Mitchell then promoted rickeyssauce.com with the discount code "KARL LOST" for 10% off.

72. Mitchell encouraged his audience to react emotionally to his statements, including by framing his allegations in terms intended to provoke anger rather than to present verifiable facts. Mitchell further indicated an intent to expand the reach of his statements by considering paid promotion of his posts, stating in a May 25, 2025 X post: "I am considering paying to boost my tweets due to this. Clearly I need to increase my reach even further."

73. Mitchell engaged in repeated public ridicule and degrading commentary directed at Jobst, including statements attacking Jobst's character and personal circumstances, and portraying him in a humiliating and demeaning manner before a public audience. These attacks included the following X posts:

    a. On April 24, 2025, Mitchell stated: "I'm not going to tell you again, Karl, when you put the fries in the bag, ask if they want a side of Rickey's."

    b. On May 7, 2025, Mitchell stated: "Karl Jobst expressed excitement at the idea of a lawsuit until he broke down in tears in the witness box." Mitchell then promoted rickeyssauce.com with the discount code "KARL LOST" for 10% off.

19

c. On May 15, 2025, Mitchell stated: "@karljobstgaming, would you also like the Rickey's World Famous Sauce analytics for your self-humiliation? Rickeyssauce.com discount code "BANKRUPT""

d. On June 10, 2025, Mitchell stated: "No breaks today, Karl. Rickey's is flying off the shelves at record rates. Put the pepper in the bag." The post contained an AI generated depiction of Jobst shirtless in a pepper field holding a chili pepper.

e. On July 26, 2025, Mitchell stated: "Thanks @karljobstgaming. Just landed in South Korea today and enjoyed this Michelin starred meal. Can't wait to blow your money on fine dining experiences." On July 27, 2025, Mitchell reposted this post with the caption: "No, Karl Jobst cannot keep the leftovers. He can eat from his trough."

74. Mitchell went beyond rhetoric by publicly circulating imagery depicting Jobst as physically restrained or killed - including graphics showing Mitchell holding a weapon over Jobst and imagery evoking hanging and "wasted life" themes. On August 11, 2025, Mitchell posted to his X account a picture depicting Jobst being restrained by Mitchell on a leash, with Mitchell holding a baseball bat.

75. As a direct and proximate result of Mitchell's repeated conduct, Jobst suffered severe emotional distress, including mental anguish, humiliation, embarrassment, and ongoing emotional harm. Jobst also experienced significant disruption to his sleep, including persistent insomnia requiring treatment, and required medical intervention, including prescription medication and other sleep aids, as well as ongoing personal and professional stress.

76. Mitchell was aware of Jobst's resulting distress as a direct response to his public attacks. In fact, Mitchell celebrated Jobst's distress and sought to monetize it. On April 1, 2026, Mitchell posted an AI generated image of Jobst in severe distress, accompanied by a

20

promotion of Rickey's World Famous Sauce. Mitchell also posted this image and promotion to his YouTube channel.

77. All of Mitchell's X posts received substantial public exposure, with each receiving tens of thousands, and in some cases, hundreds of thousands of impressions.

## CLAIMS FOR RELIEF

## COUNT I – DEFAMATION PER SE

78. Plaintiff repeats and realleges paragraphs 1–77 as if fully set forth herein.

79. Mitchell published statements concerning Jobst that accused him of criminal or unlawful conduct in connection with his bankruptcy.

80. On June 24, 2025, Mitchell published a statement on X: "Karl Jobst has engaged in serious illegal activity before and during this bankruptcy process. I may take him back to court."

81. During the December 4 Livestream, Mitchell published statements on YouTube conveying that Jobst was dishonest in connection with the bankruptcy proceedings, including by comparing Jobst's conduct to "somebody evading taxes."

82. These statements were false.

83. Mitchell made these statements with knowledge of their falsity or with reckless disregard for the truth.

84. The statements constitute defamation per se because they impute criminal conduct.

85. As a direct result of Mitchell's defamation, Jobst suffered presumed damages and actual injury, including, but not limited to, insult, pain, embarrassment, humiliation, emotional suffering, injury to his reputation, harm to his relationship with his audience, lost

21

future earnings and diminished earning capacity, and other economic losses, in a sum to be determined by the Jury.

86.     Mitchell's conduct was willful and malicious, entitling Jobst to punitive damages.

## COUNT II – DEFAMATION PER SE

87.     Plaintiff repeats and realleges paragraphs 1–77 as if fully set forth herein.

88.     Mitchell published statements asserting that Jobst created a GoFundMe campaign on false premises with knowledge and intent to defraud his audience of $200,000.

89.     On June 3, 2025, Mitchell published to YouTube a video in which he stated: "You created a GoFundMe campaign with the knowledge and intent to fund the existing lawsuit on false premises. Period. End of paragraph." Mitchell specified the amount of the alleged fraud, stating: "So apparently the only time Mr Jobst ever believes me is after six months pass without follow up and he stands to gain $200,000 from his audience."

90.     On August 12, 2025, Mitchell published a statement on X: "I LIED FOR FOUR YEARS, SCAMMED $200,000, WENT BANKRUPT, AND LOST EVERY SHRED OF CREDIBILITY TO MY NAME BUT AT LEAST I'M PROBABLY TOO MUCH OF A LAZY BROKE AND UNETHICAL SCUMBAG TO EVER FULLY PAY KING BILLY'S $1,000,000..." Mitchell tagged Jobst in the post.

91.     On August 27, 2025, Mitchell published to YouTube a livestream in which he stated: "How do you feel about the fact? How do you feel about how he misrepresented the lawsuits with an 'S' to take advantage of his audience? ...I think that's lousy. I think if I did that, I'd probably be in jail."

92.     These statements were false.

93.     Mitchell made these statements with knowledge of their falsity or with reckless disregard for the truth.

22

94.     The statements constitute defamation per se because they impute criminal conduct.

95.     As a direct result of Mitchell's defamation, Jobst suffered presumed damages and actual injury, including, but not limited to, insult, pain, embarrassment, humiliation, emotional suffering, injury to his reputation, harm to his relationship with his audience, lost future earnings and diminished earning capacity, and other economic losses, in a sum to be determined by the Jury.

96.     Mitchell's conduct was willful and malicious, entitling Jobst to punitive damages.

## COUNT III – DEFAMATION PER SE

97.     Plaintiff repeats and realleges paragraphs 1–77 as if fully set forth herein.

98.     Mitchell published a statement asserting that Jobst had wrongfully obtained and misappropriated funds from a 2021 GoFundMe campaign intended for third parties. Mitchell's statement conveyed that Jobst had deceptively taken and retained approximately $50,000 for his own benefit.

99.     On November 12, 2025, Mitchell published to YouTube a livestream in which he stated: "He said he needed money to defend this. And he allowed everyone to believe, he worked hard for everyone to believe that it was about cheating in order to get people to donate money… He had $50,000 in one GoFundMe, 55, I think, and $200,000 in another GoFundMe. So, publicly there was $250,000 donated… He acknowledged that Notch gave him $300,000. So the $250,000 public dollars… from the two different GoFundMes and $300,000 is $550,000… let's forget 550. Let's just say 500. It's an easier number… he deceptively took $500,000 from you… If that doesn't piss you off, I can't help you."

100.     This statement was false.

23

101. Mitchell made this statement with knowledge of its falsity or with reckless disregard for the truth.

102. The statement constitutes defamation per se because it imputes criminal conduct.

103. As a direct result of Mitchell's defamation, Jobst suffered presumed damages and actual injury, including, but not limited to, insult, pain, embarrassment, humiliation, emotional suffering, injury to his reputation, harm to his relationship with his audience, lost future earnings and diminished earning capacity, and other economic losses, in a sum to be determined by the Jury.

104. Mitchell's conduct was willful and malicious, entitling Jobst to punitive damages.

## COUNT IV – DEFAMATION PER SE

105. Plaintiff repeats and realleges paragraphs 1–77 as if fully set forth herein.

106. Mitchell published a statement asserting that Jobst had deceptively taken $300,000 from Markus Persson, also known as Notch.

107. On November 12, 2025, Mitchell published to YouTube a livestream in which he stated: "He acknowledged that Notch gave him $300,000… So the $250,000 public dollars… from the two different GoFundMes and $300,000 is $550,000… let's forget 550. Let's just say 500. It's an easier number… he deceptively took $500,000 from you…"

108. This statement was false.

109. Mitchell made this statement with knowledge of its falsity or with reckless disregard for the truth.

110. The statement constitutes defamation per se because it imputes criminal conduct.

24

111.    As a direct result of Mitchell's defamation, Jobst suffered presumed damages and actual injury, including, but not limited to, insult, pain, embarrassment, humiliation, emotional suffering, injury to his reputation, harm to his relationship with his audience, lost future earnings and diminished earning capacity, and other economic losses, in a sum to be determined by the Jury.

112.    Mitchell's conduct was willful and malicious, entitling Jobst to punitive damages.

## COUNT V – DEFAMATION PER SE

113.    Plaintiff repeats and realleges paragraphs 1–77 as if fully set forth herein.

114.    Mitchell published statements asserting that Jobst had engaged in large scale fraud involving more than half a million dollars obtained from his audience.

115.    On August 27, 2025, Mitchell published to YouTube a livestream in which he stated in reference to Jobst: "He actually scammed his viewers out of more than $500,000. So there, I'm telling you something that isn't reported. More than half a million dollars."

116.    On October 29, 2025, Mitchell published to YouTube a livestream in which he stated in reference to Jobst: "He said that so you believe him. The guy who took over half a million dollars fraudulently from his listeners."

117.    On December 4, 2025, Mitchell published to YouTube a livestream in which he stated in reference to Jobst: "He took over half a million dollars of people's money. Okay. Based upon, let me be kind, based upon the falsehood. Yes, he took over a half a million dollars. I mean, some people argue that you should go to jail for doing something like that… if I did that, I would go to jail…"

118.    These statements were false.

119.    Mitchell made these statements with knowledge of their falsity or with reckless disregard for the truth.

25

120. The statements constitute defamation per se because they impute criminal conduct.

121. As a direct result of Mitchell's defamation, Jobst suffered presumed damages and actual injury, including, but not limited to, insult, pain, embarrassment, humiliation, emotional suffering, injury to his reputation, harm to his relationship with his audience, lost future earnings and diminished earning capacity, and other economic losses, in a sum to be determined by the Jury.

122. Mitchell's conduct was willful and malicious, entitling Jobst to punitive damages.

## COUNT VI – UNAUTHORIZED PUBLICATION OF NAME OR LIKENESS

### (FLA. STAT. § 540.08)

123. Plaintiff repeats and realleges paragraphs 1–77 as if fully set forth herein.

124. Mitchell used Jobst's name and likeness, including Jobst's image, video footage, name, and persona in connection with posts and materials promoting commercial products. Mitchell additionally used Jobst's likeness as part of a product (signed headshot) for sale through his company's website rickeyssauce.com.

125. Mitchell's use of Jobst's identity was for commercial purposes, including to advertise, promote, and sell products through links and promotional discount codes directing users to rickeyssauce.com.

126. Mitchell did so without Jobst's consent.

127. As a result of Mitchell's unauthorized use of Jobst's name and likeness, Jobst has suffered injury, including damage to his reputation, commercial value, and the value of his identity.

128. Mitchell's conduct was knowing and willful.

26

129.    Plaintiff seeks all available damages, including compensatory and punitive damages, as well as injunctive relief prohibiting further unauthorized use of his name and likeness.

## COUNT VII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

130.    Plaintiff repeats and realleges paragraphs 1–77 as if fully set forth herein.

131.    Mitchell engaged in a sustained course of conduct directed at Jobst, including the repeated publication of statements and imagery designed to humiliate, intimidate, and degrade Jobst before a public audience.

132.    This conduct included, among other things, the use of imagery depicting Jobst as being hanged or otherwise subjected to violence, the publication of dehumanizing and degrading images and content portraying Jobst in humiliating circumstances, repeated statements mocking Jobst's financial condition, including references to bankruptcy, homelessness, and loss of assets, and the invocation or threat of further legal action in conjunction with such public accusations and conduct.

133.    Mitchell further amplified this conduct by encouraging audience reaction, pairing such statements and imagery with ridicule and taunting commentary, and linking the content to the promotion of his own commercial products.

134.    Mitchell's conduct, taken as a whole, was extreme and outrageous and exceeded all bounds of decency tolerated in a civilized community.

135.    Mitchell engaged in this conduct intentionally or recklessly, with knowledge of a high probability that his actions would cause severe emotional distress to Jobst, and continued the conduct after knowing that his actions were in fact causing severe emotional distress to Jobst.

136.    As a direct and proximate result of Mitchell's conduct, Jobst suffered severe emotional distress, including mental anguish, humiliation, embarrassment, ongoing emotional

27

harm, significant sleep disruption, persistent insomnia requiring treatment, and related personal and professional stress.

137.    Mitchell's conduct was willful and malicious, entitling Jobst to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Mitchell as follows:

A. Awarding damages for injury to Plaintiff's reputation, lost profits, and diminished earning capacity, and Plaintiff's mental anguish, distress, and humiliation;

B. Awarding punitive damages in the maximum amount permitted by law;

C. Awarding pre- and post-judgment interest;

D. Assessing costs incurred in the prosecution of this action; and

E. Granting such other and further relief as the Court deems just and proper.

Dated: May 5, 2026

Respectfully submitted,

Karl Jobst
32 Ventura Street
Pallara, QLD, Australia 4110
Karljobstgaming@gmail.com
+61 432 597 334
Pro Se Plaintiff

28