UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE #: 0:26-cv-60997-DSW

KARL JOBST,

       Plaintiff,

vs.

WILLIAM JAMES MITCHELL,

       Defendant,

_____/

## DEFENDANT WILLIAM JAMES MITCHELL'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendant, William James Mitchell ("Defendant"), by and through undersigned counsel, respectfully moves this Court to dismiss Plaintiff Karl Jobst's Amended Complaint [DE 8] pursuant to Federal Rule of Civil Procedure 12(b)(6), and states as follows:

### I.    Introduction

Plaintiff, Karl Jobst, brings this action arising out of a public dispute with Defendant concerning prior litigation, bankruptcy proceedings, and related public commentary. In his First Amended Complaint, Plaintiff alleges that Defendant made defamatory statements accusing Plaintiff of "fraud," "illegal activity," and the misappropriation of funds in connection with Plaintiff's fundraising activities and prior litigation.

Plaintiff is, at minimum, a limited-purpose public figure who voluntarily injected himself into a public controversy. Accordingly, Plaintiff must plausibly allege that Defendant acted with actual malice. The Amended Complaint fails to do so. The challenged statements arise from publicly known events, including Plaintiff's own conduct and public statements, as well as prior proceedings. The purportedly defamatory statements reflect Defendant's interpretation and

commentary on those disclosed facts. When considered in context, the statements constitute non-actionable opinion and rhetorical expression rather than verifiable false statements of fact.

The Amended Complaint also relies, in part, on the statements of third-parties, including social media posts and viewer comments. Plaintiff merely alleges that Defendant agreed with or endorsed some of those statements. Such allegations are insufficient to establish liability as a matter of law.

Finally, Plaintiff's claims for unauthorized use of likeness and intentional infliction of emotional distress likewise fail as a matter of law. Accordingly, the Amended Complaint should be dismissed in its entirety.

## II.      Legal Memorandum

### A.      No viable claims for defamation per se

#### 1.      Defamation, generally

Defamation, which includes libel and slander, "may generally be defined as the unprivileged publication of false statements which naturally and proximately result in injury to another." *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983) (quoting *Wolfson v. Kirk*, 273 So. 2d 774, 776 (Fla. 4th DCA 1973)). To state a claim for defamation, a plaintiff must plead the following elements: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008) (citing *Restatement (Second) of Torts* §§ 558B, 580A-580B).

Additionally, a defamatory statement is of a per se "character when, 'considered alone without innuendo,' they contain (1) charges that a person has committed an infamous crime, or (2)

has contracted an infectious disease, or (3) they carry statements tending to subject a person to hatred, distrust, ridicule, contempt or disgrace, or (4) to injure a person in his trade or profession." *Adams v. News-Journal Corp.*, 84 So. 2d 549, 551 (Fla. 1955) (citing *Richard v. Gray*, Fla., 62 So. 2d 597 (Fla. 1953)). "In a per se action, the statements are 'so obviously defamatory' and 'damaging to reputation' that the injurious nature of the statement is apparent from the words in the statement itself[.]" *Paulson v. Cosm. Dermatology, Inc.*, No. 17-cv-20094, 2017 WL 2484197, at *3 (S.D. Fla. June 8, 2017) (citing *Alan v. Wells Fargo Bank, N.A.*, 604 F. App'x 863, 865 (11th Cir. 2015)). Thus, in determining whether a publication is defamatory per se, consideration is given only to the "four corners" of the publication and the language used should be interpreted as the "common mind" would normally understand it. *Paulson*, 2017 WL 2484197, at *3 (citing *Ortega Trujillo v. Banco Central Del Ecuador*, 17 F. Supp. 2d 1334, 1339 (S.D. Fla. 1998); *McIver v. Tallahassee Democrat, Inc.*, 489 So. 2d 793, 794 (Fla. 1st DCA 1986)).

*Sub judice*, in looking at the four corners of Defendants' alleged statements, none of them reach this threshold and Counts I through V should be dismissed.

### 2. The Alleged Statements Constitute Non-Actionable Opinion and Rhetorical Hyperbole

True statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment. *Keller v. Miami Herald Publ'g Co.*, 778 F.2d 711, 714–15, 717 (11th Cir. 1985) (applying Florida law); *Miami Child's World, Inc. v. Sunbeam Television Corp.*, 669 So.2d 336, 336 (Fla. Dist. Ct. App. 1996).

Under Florida law, a defendant publishes a "pure opinion" when the defendant makes a comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public. *From v. Tallahassee*

*Democrat, Inc.*, 400 So.2d 52, 57 (Fla. Dist. Ct. App. 1981). Mixed expression of opinion occurs when an opinion or comment is made which is based upon facts regarding the plaintiff or his conduct that have not been stated in the publication or assumed to exist by the parties to the communication. Id.; *Stembridge v. Mintz*, 652 So.2d 444, 446 (Fla. Dist. Ct. App. 1995).

Whether the statement is one of fact or opinion and whether a statement of fact is susceptible to defamatory interpretation are questions of law for the court. *Keller*, 778 F.2d at 715; *Fortson v. Colangelo*, 434 F.Supp.2d 1369, 1379 (S.D. Fla. 2006); *From*, 400 So.2d at 56-57. When making this assessment, a court should construe statements in their totality, with attention given to any cautionary terms used by the publisher in qualifying the statement. *Keller*, 778 F.2d at 717. It is also the court's function to determine "whether an expression of opinion is capable of bearing a defamatory meaning because it may reasonably be understood to imply the assertion of undisclosed facts that justify the expressed opinion about the plaintiff or his conduct." *Stembridge*, 652 So.2d at 446 (quoting Restatement (Second) of Torts § 566, comment c).

Statements are not actionable where they cannot reasonably be interpreted as stating actual facts or imply no provably false factual connotation. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990). Courts must evaluate the challenged statements in their full context, including the medium, tone, and surrounding circumstances in which they were made. *Horsley v. Rivera*, 292 F.3d 695, 701 (11th Cir. 2002). This includes consideration of whether the statements arise in the context of an ongoing public controversy, involve disputed subject matter, and are presented in a format, such as online commentary, livestreams, or editorialized content, where audiences reasonably expect opinion, criticism, and rhetorical expression rather than precise factual reporting.

Here, the Complaint relies heavily on statements made in online videos, livestreams, and social media posts discussing Plaintiff's bankruptcy, fundraising activities, and prior litigation. These statements are presented in an informal, argumentative, and often exaggerated style characteristic of online commentary. In that context, phrases such as allegations that Plaintiff "scammed" funds, engaged in "illegal activity," or misappropriated substantial sums are not reasonably understood as precise factual assertions, but instead reflect Defendant's interpretation and characterization of underlying events that are themselves described and disputed within the Complaint and its incorporated materials. Plaintiff's defamation claims fail at the threshold because the statements identified in the Complaint, when read in context, constitute non-actionable opinion, interpretation, and rhetorical hyperbole rather than verifiable statements of fact.

Courts have consistently held that exaggerated or figurative language, particularly in the context of public disputes, constitutes non-actionable rhetorical hyperbole. *Horsley*, 292 F.3d at 701 (finding statements made in heated public debate to be non-actionable opinion); see also *Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 14 (1970) (use of the term "blackmail" in public discourse was non-actionable rhetorical hyperbole).

The exhibits incorporated into the Complaint further confirm that the challenged statements arise from Defendant's evaluation of underlying facts that are themselves disclosed within the pleadings. Where the facts underlying a statement are disclosed or known to the audience, the speaker's characterization of those facts is protected opinion. *Horsley*, 292 F.3d at 701. In such circumstances, the statements constitute protected "mixed opinion," in which the speaker discloses the underlying facts and offers an interpretation or conclusion based on those facts. Because the audience is free to evaluate the disclosed information and draw its own conclusions, such statements are not actionable as defamation.

For example, Plaintiff challenges imagery in which his face is superimposed onto a lobster and depicted with a clown nose. Such content is plainly satirical and non-literal. No reasonable viewer could interpret this imagery as asserting a verifiable statement of fact. Rather, it constitutes rhetorical hyperbole and parody fully protected by the First Amendment.

At most, the Complaint alleges a disagreement between the parties as to the interpretation and significance of publicly known events. Such disputes over meaning and characterization do not give rise to defamation liability. Because the statements identified in the Complaint are not actionable as a matter of law, Plaintiff's defamation claims fail. Accordingly, Counts I through V for defamation should be dismissed.

### 3.      Plaintiff Fails to Plausibly Allege Actual Malice

Where a plaintiff is a public figure or the statements involve a matter of public concern, the plaintiff must plead facts showing that the defendant acted with actual malice, meaning with knowledge that the statements were false or with reckless disregard for their truth or falsity. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). This standard is subjective and requires allegations that the defendant actually entertained serious doubts as to the truth of the statements at the time they were made.

Although the Amended Complaint alleges that certain trustee communications did not identify wrongdoing and that Defendant continued to characterize Plaintiff's conduct as fraudulent or improper, those allegations do not plausibly establish actual malice. A conclusion by a third party that no formal violation was identified does not render Defendant's statements knowingly false, nor does it establish that Defendant subjectively entertained serious doubts as to their truth. At most, the Amended Complaint alleges a disagreement regarding the interpretation and significance of underlying events. Such a disagreement does not constitute actual malice. The First

Amendment does not require a speaker to adopt a particular interpretation of disputed facts, nor does it impose liability for expressing a view that others contest.

Reliance on publicly available information and disclosed materials is inconsistent with a finding of actual malice. The Amended Complaint does not plausibly allege that Defendant disbelieved his own statements, deliberately avoided the truth, or was highly aware that his statements were probably false. Here, the statements identified in the Amended Complaint arise from publicly known events, including Plaintiff's bankruptcy proceedings, fundraising activities, and related disputes, and reflect Defendant's interpretation of those events. Terms such as "fraud," "scam," or "illegal activity," when used in this context, are inherently evaluative and not susceptible to precise verification as true or false. Plaintiff's allegations amount to a disagreement with Defendant's characterization of underlying facts, not the identification of objectively false statements. Such disagreement does not establish falsity or give rise to a defamation claim.

In the end, the Complaint merely includes conclusory allegations of malice. DE 8, pp. 17-18. However, as the Eleventh Circuit reiterated last year, these "formulaic recitations of the 'actual malice' element" are insufficient to state a claim. *Reed v. Chamblee*, No. 24-10058, 2025 WL 1874638, at *3 (11th Cir. July 8, 2025) (finding the plaintiff's conclusory assertions that the defendant acted with actual malice insufficient). Because the Amended Complaint failed to properly plead actual malice, Counts I through V should be dismissed.

### 4. The Complaint Improperly Relies on Statements by Third Parties

The Amended Complaint alleges that Defendant referenced or agreed with certain statements that were purportedly made by third-parties. However, such allegations are insufficient to establish republication or legal responsibility on Defendant's part as a matter of law. Rather, to state a defamation claim, Plaintiff must identify a false statement **made by the Defendant**.

Liability cannot be based on statements by independent third parties unless Defendant is plausibly alleged to have adopted or republished those statements as his own.

Here, Plaintiff relies on statements made by social media users and commenters and alleges that Defendant referenced or agreed with such content. However, mere commentary on or agreement with third-party statements is insufficient to establish adoption or republication. The Amended Complaint does not plausibly allege that Defendant created, controlled, or republished any third-party statement as his own. *See Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321–22 (11th Cir. 2006) (rejecting liability where defendant did not create or control the content at issue).

Because Plaintiff fails to plausibly allege that Defendant is responsible for the statements made by third-parties, those statements cannot support a defamation claim. Accordingly, Counts I through V should be dismissed to the extent they rely on statements attributable to third parties.

### 5.      The Exhibits Do Not Establish Falsity

Plaintiff's defamation claims fail because the materials incorporated into the Amended Complaint do not establish that Defendant's statements are false. In evaluating a motion to dismiss, the Court may consider exhibits attached to the complaint, and where such materials are referenced, they may be considered in assessing the plausibility of the claims. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007).

Here, the Amended Complaint relies on communications, reports, and other materials relating to Plaintiff's bankruptcy proceedings, fundraising activities, and related disputes. While Plaintiff alleges that certain communications did not identify criminal conduct or formal wrongdoing, the absence of such findings does not establish falsity.

At most, these materials reflect that the underlying events are subject to differing interpretations. A determination that no formal violation was identified is not equivalent to a

finding that the conduct did not occur or could not reasonably be characterized in critical or evaluative terms. Statements reflecting one interpretation of disclosed facts are not actionable merely because others disagree.

Because the materials incorporated into the Amended Complaint do not establish that Defendant's statements are objectively false, but instead reflect competing interpretations of disclosed events, Plaintiff fails to state a claim for defamation.

Accordingly, Counts I through V should be dismissed because Plaintiff fails to plausibly allege falsity.

### 6.      The Alleged Statements Are Not Actionable as a Matter of Law

Although the Amended Complaint identifies statements using terms such as "fraud," "scam," "illegal activity," and references to specific dollar amounts, those statements are not actionable because they constitute non-verifiable interpretations, characterizations, or conclusions drawn from disclosed information.

To state a claim for defamation, a plaintiff must allege a false statement of fact that is capable of being proven true or false. Statements that cannot reasonably be interpreted as stating actual facts, or that do not imply a provably false factual assertion, are not actionable. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19–20 (1990). Here, the statements identified in the Amended Complaint arise from publicly known events, including Plaintiff's bankruptcy proceedings, fundraising activities, and related disputes, and reflect Defendant's interpretation of those events. Terms such as "fraud," "scam," or "illegal activity," when used in this context, are inherently evaluative and not susceptible to precise verification as true or false.

Plaintiff's allegations amount to a disagreement with Defendant's characterization of underlying facts, not the identification of objectively false statements. Such disagreement does not

establish falsity or give rise to a defamation claim. Because the statements identified in the Amended Complaint are not actionable as a matter of law, Counts I through V should be dismissed.

**B.      Plaintiff's claim for unauthorized use of likeness fails as a matter of law**

**1.      Any claim based on use of  likeness fails as a matter of law**

Plaintiff's claim fails because the Amended Complaint does not plausibly allege a use of Plaintiff's likeness "for purposes of trade or for any commercial or advertising purpose" within the meaning of Florida law. § 540.08(1), Fla. Stat.

Florida law narrowly construes the concept of "commercial use" to apply to the unauthorized use of a person's identity to directly promote a product or to imply endorsement. *Tyne v. Time Warner Entm't Co., L.P.*, 901 So. 2d 802, 808–10 (Fla. 2005). By contrast, the use of a person's name or likeness in expressive works, including commentary, reporting, or other matters of public interest, does not constitute a commercial use merely because the work is distributed for profit or is associated with revenue-generating activity. *See Lane v. MRA Holdings*, LLC, 242 F. Supp. 2d 1205, 1212–13 (M.D. Fla. 2002).

The Amended Complaint alleges that Defendant referenced Plaintiff in connection with monetized content, including the use of phrases such as "KARL LOST" in discount codes and references to products. However, the mere fact that expressive content is monetized, or that references to a person appear alongside revenue-generating activity, does not transform such use into a "commercial purpose" within the meaning of Florida law. *Tyne*, 901 So. 2d at 809–10 (holding that the statute applies only where a person's identity is used to directly promote a product or service). Courts distinguish between the use of a person's identity to directly advertise a product and the use of that identity within expressive content addressing matters of public concern. See *id.*

Here, the alleged uses of Plaintiff's name and likeness are inseparable from Defendant's commentary regarding Plaintiff's conduct and the surrounding public controversy. The Amended Complaint does not plausibly allege that Defendant used Plaintiff's identity to suggest Plaintiff's sponsorship, approval, or endorsement of any product. Instead, the allegations reflect that Plaintiff's name and likeness were referenced as part of Defendant's expressive works, which are not actionable merely because they are disseminated through monetized platforms or are associated with products. *Lane v. MRA Holdings*, 242 F. Supp. 2d at 1212–13.

Moreover, the alleged use of Plaintiff's name in discount codes or similar phrases does not constitute a commercial use where, as here, those references are tied to commentary, criticism, or parody rather than to the direct promotion of a product or service. Such uses do not establish that Defendant used Plaintiff's identity as a stand-alone commercial endorsement or advertisement. *Tyne*, 901 So. 2d at 809–10.

Because the alleged uses arise in the context of expressive content and do not plausibly suggest endorsement or advertising independent of that expression, Plaintiff's claim based on use of likeness fails as a matter of law. Accordingly, Count VI for unauthorized use of likeness should be dismissed.

### 2.    The Alleged Conduct Is Protected Speech

Even if the Amended Complaint could plausibly allege a commercial use, which it cannot, Plaintiff's claim independently fails because the alleged use of Plaintiff's likeness is protected by the First Amendment.

The First Amendment protects expressive works that incorporate a person's identity where the use occurs as part of expressive commentary or depiction, rather than as a stand-alone commercial endorsement or advertisement. *Tyne v. Time Warner Entm't Co., L.P.*, 901 So. 2d 802,

808–10 (Fla. 2005). Courts further recognize that speech addressing matters of public concern occupies the "highest rung of the hierarchy of First Amendment values" and is entitled to special protection. *Snyder v. Phelps*, 562 U.S. 443, 452 (2011). Here, the Amended Complaint itself alleges that Defendant used Plaintiff's likeness in the context of online videos, commentary, and related content critiquing Plaintiff's conduct, financial dealings, and related public controversy. Such subject matter—allegations of financial misconduct, fundraising activity, and bankruptcy-related issues—plainly involves matters of public concern. *Id.* at 453–54.

The allegations further reflect that Plaintiff is depicted in exaggerated, critical, or satirical ways, including through imagery and language that depart from any literal representation of fact. This type of depiction is paradigmatic expressive speech. Where a person's identity is used within expressive content and not to directly promote a product or service, such use does not constitute a commercial purpose under Florida law. *Tyne*, 901 So. 2d at 808–10.

The First Amendment does not permit liability merely because speech is offensive, exaggerated, or emotionally harmful to its subject. *Snyder*, 562 U.S. at 458. Nor does it allow a plaintiff to recharacterize protected commentary as a commercial appropriation simply because the speaker's platform is monetized. See *Lane v. MRA Holdings, LLC*, 242 F. Supp. 2d 1205, 1212–13 (M.D. Fla. 2002).

Accordingly, because the alleged use of Plaintiff's likeness arises in the context of protected commentary on matters of public concern and reflects expressive, non-literal depictions, Plaintiff's claim is barred by the First Amendment as a matter of law. Accordingly, Count VI should be dismissed.

      3.      **Exaggerated and Transformative Depictions Are Non-Actionable as a Matter of Law**

Courts have recognized that exaggerated, non-literal depictions of an individual, particularly in entertainment and commentary, are not actionable where they add new expression, meaning, or message.

In *Mitchell v. Cartoon Network, Inc.*, the court dismissed a right-of-publicity claim at the pleading stage based on a character that was an obvious but highly exaggerated portrayal of the plaintiff. 2015 WL 12839135 (D.N.J. Nov. 20, 2015). Although not binding, this reasoning is consistent with established First Amendment principles recognizing protection for exaggerated and transformative depictions. The court emphasized that, although the character drew from recognizable traits, it was "not a literal representation" and instead was "distorted for purposes of lampoon, parody, or caricature."  The court further held:

> "Because they have added something new, Defendants' appropriation of Plaintiff's identity passes the Transformative Use Test, and thus receives the protection of the First Amendment. This also means that Plaintiff has failed to state a claim upon which relief can be granted, and so the case must be dismissed."

*Id*. At *6.

The same principle applies here. Plaintiff challenges exaggerated, stylized depictions, including imagery portraying him in lobster form with comedic alterations. Notably, Plaintiff avoids describing the image with specificity, instead relying on generalized characterizations that omit its exaggerated and non-literal features. Such content is plainly non-literal and expressive, and no reasonable viewer would interpret it as asserting verifiable facts about Plaintiff. Put simply, the law does not impose liability for commentary that transforms a person into an exaggerated or fictionalized depiction. The plaintiff in *Mitchell* was not a giant floating head, and Plaintiff here is not a lobster.

This conclusion is consistent with controlling precedent recognizing that statements must be interpreted in context and are not actionable where, in context, they cannot reasonably be

interpreted as stating verifiable facts. *See Horsley v. Rivera*, 292 F.3d 695, 701 (11th Cir. 2002); *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990).

As in *Mitchell*, the challenged content does not replicate reality; it transforms it. Where expression adds new meaning or message and departs from literal depiction, it falls squarely within the protection of the First Amendment and cannot support a claim for liability. Accordingly, Count VI should be dismissed because the alleged depictions are non-actionable as a matter of law.

### C.      No viable claim of intentional infliction of emotional distress

#### 1.      The Alleged Conduct Is Not Extreme and Outrageous as a Matter of Law

Plaintiff's claim for intentional infliction of emotional distress fails because the alleged conduct does not rise to the level required under Florida law. To state a claim for intentional infliction of emotional distress, a plaintiff must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985). This is a high threshold, and liability exists only where the conduct is "atrocious" and "utterly intolerable in a civilized community." *Id.*

The Complaint does not meet this standard. The alleged conduct consists of Defendant's statements and commentary regarding Plaintiff's conduct, including his bankruptcy, fundraising activities, and related matters. Even accepting these allegations as true, such conduct constitutes criticism and commentary, not the type of extreme and outrageous behavior required to sustain this claim.

Florida courts routinely dismiss intentional infliction of emotional distress claims at the pleading stage where the alleged conduct, even if wrongful, does not meet this exacting standard. In *Valdes v. GAB Robins N. Am., Inc.*, 924 So. 2d 862, 866 (Fla. 3d DCA 2006), the court affirmed dismissal where defendants allegedly investigated and reported the plaintiff for fraud, holding that

such conduct was not "so outrageous in character and extreme in degree as to go beyond the bounds of decency."

Here, Defendant's alleged statements fall well short of the type of conduct required under Florida law. As a matter of law, speech criticizing another individual, even if harsh or offensive, does not constitute extreme and outrageous conduct. Because the allegations do not satisfy the required standard, the intentional infliction of emotional distress claim fails as a matter of law and Count VII should be dismissed.

### 2.   The Claim Is Impermissibly Based on the Same Conduct as the Defamation Claim

Plaintiff's intentional infliction of emotional distress claim independently fails because it is based entirely on the same conduct underlying his defamation claims. Florida law does not permit a plaintiff to circumvent the requirements and defenses applicable to defamation by recasting the same underlying conduct as a different tort. Under the single publication and single action rule, a plaintiff may not pursue multiple tort claims based on the same publication and alleged injury. *Callaway Land & Cattle Co., Inc. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208–09 (Fla. 4th DCA 2002). That rule is designed to prevent plaintiffs from "recasting essentially the same facts into several causes of action all meant to compensate for the same harm." *Id.*

Here, Plaintiff's intentional infliction of emotional distress claim is based on the same alleged statements and publications that form the basis of his defamation counts. The Complaint does not identify any independent conduct that would support a separate emotional distress claim. Because the claim is duplicative and based on the same alleged publications, it is barred as a matter of law and Count VII must be dismissed.

### III.   The Complaint is an impermissible shotgun pleading

The Eleventh Circuit has repeatedly condemned shotgun pleadings that fail to provide defendants with adequate notice of the claims against them and the grounds upon which each claim rests. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015).

In *Weiland*, the court identified several categories of shotgun pleadings, including complaints that contain multiple counts incorporating all preceding allegations, complaints that fail to separate distinct causes of action, and complaints that do not clearly connect specific factual allegations to particular claims. *Id*. at 1321–23. The unifying characteristic of such pleadings is that they fail to give defendants adequate notice of the claims and the grounds upon which each claim rests. *Id*. at 1323.

Although the Amended Complaint includes detailed allegations and incorporates numerous exhibits, it nevertheless suffers from these same deficiencies. Plaintiff asserts multiple defamation counts based on overlapping and repetitive allegations, without clearly identifying which specific statements correspond to each count. The Amended Complaint further relies on extensive incorporated materials and third-party statements without clearly tying them to particular causes of action or legal theories.

As a result, the pleading obscures the basis of Plaintiff's claims and makes it difficult to determine which factual allegations support which causes of action. This lack of clarity impedes Defendant's ability to respond and the Court's ability to evaluate the sufficiency of the claims under Rule 12(b)(6).

Because the Amended Complaint fails to provide a clear and concise statement of the claims and does not meaningfully connect factual allegations to specific causes of action, it constitutes an impermissible shotgun pleading and should be dismissed.

**WHEREFORE**, Defendant respectfully requests that this Court enter an Order dismissing the Complaint in its entirety and awarding such other and further relief as the Court deems just and proper.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 9th day of June 2026, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system or by email to all parties. I further certify that I either mailed the foregoing document and the Notice of Electronic Filing by first class mail to any non CM/ECF participants and/or the foregoing document was served via transmission of Notice of Electronic Filing generated by CM/ECF to any and all active CM/ECF participants.

*/s/Michele T. Mitchell*
Michele T. Mitchell
FLA. BAR NO. 1048843
***Attorney for Defendant***
JOHNSON, ANSELMO, MURDOCH, BURKE, PIPER & HOCHMAN, P.A.
2455 E. Sunrise Blvd., Suite 1000
Fort Lauderdale, FL 33304
(954) 463-0100 – Phone
**Primary Service:**
mtmitchell@jambg.com
**Secondary Service:**
cintron@jambg.com

## SERVICE LIST

**KARL JOBST**
**Pro Se Plaintiff**
32 Ventura Street
Pallara, QLD, Australia 4110
Phone: +61 432 597 334
karljobstgaming@gmail.com

---

Michele T. Mitchell, Esq.
**Counsel for Defendant**
JOHNSON, ANSELMO, MURDOCH,
BURKE, PIPER & HOCHMAN, P.A.
2455 E. Sunrise Blvd., Suite 1000
Fort Lauderdale, FL 33304
(954) 463-0100 – Phone
mtmitchell@jambg.com
cintron@jambg.com