## UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

KARL JOBST,

                              Plaintiff,

v.

WILLIAM JAMES MITCHELL,

                              Defendant.

Case No. 0:26-cv-60997-DSW

FILED BY _____ D.C.

JUN 16 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SECURITY FOR COSTS

Plaintiff Karl Jobst ("Jobst") responds in opposition to Defendant William Mitchell's ("Mitchell") Motion for Security for Costs (ECF No. 17) ("MSC") and states as follows:

### INTRODUCTION

Defendant's MSC is a thinly veiled attempt to bar Plaintiff's access to the court. The MSC cites no federal rule, binding authority, state statute or local rule that permits such a requirement. Defendant attempts to abuse the Court's discretion by requesting an outrageous bond that would effectively function as a dismissal mechanism. By contrast, Florida courts have repeatedly warned of the dangers of imposing restrictive bonds, even going so far as to declare them unconstitutional.

Defendant desperately reaches out to external jurisdictions for any mention of a District Court's discretionary power and even when such a mention is referenced, the MSC fails to apply or understand how those courts exercised such discretion. Even worse, the case law cited by Defendant, as sparse as it is, works against their argument. The MSC appears to

1

stand on the shoulders of a single opinion, citing *Aggarwal* repeatedly, yet in that case the Court expressly cautioned against bond requirements that function as a financial gatekeeper.

The MSC relies almost entirely on the fact that Plaintiff is bankrupt and is financially burdened to justify its request. However, it is precisely because of Plaintiff's position that any request for bond should be restrained. Even if the current forum did provide an avenue for which Defendant could seek such a bond, the amount requested is not reasonable or tethered to reality. The MSC provides no breakdown for anticipated costs and fails to outline with any specificity why the figure is so extreme. Nor does the MSC even attempt to base such a demand on the merits of their case.

The MSC makes a request that is unconstitutional, lacks any authority, and is made entirely in bad faith in a frantic ploy to suppress Plaintiff's right to seek relief from the court. Therefore, the MSC must be denied.

## ARGUMENT

### 1. DEFENDANT'S MOTION CITES NO AUTHORITY FOR A DEMAND FOR SECURITY FOR COSTS

The MSC does not sufficiently provide the legal basis for its request. There is no Federal Rule that governs a Motion for Security for Costs. In circumstances where a demand lacks foundation in the FRCP, the court is required to undertake an "unguided Erie" inquiry to decide whether to apply state law or federal common law. *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1349 (11th Cir. 2018). Undergoing such an inquiry, the Court will find that no applicable state law or federal common law exists to support such a motion in the Southern District of Florida.

The MSC relies on the proposition that the district court has the inherent authority to require plaintiff to post security for costs. MSC at 4. The MSC cites *Simulnet East Assocs. v. Ramada Hotel Operating Co.*, but omits the caveat immediately following: "Typically federal courts, either by rule or by case-to-case determination, follow the forum state's practice with

2

regard to security for costs, as they did prior to the federal rules; this is especially common when a non-resident party is involved." 37 F.3d 573, 574 (9th Cir. 1994). Indeed, district courts do have authority to impose security for costs, though in practice the authority usually stems from state practice or a local rule.

This is perfectly illustrated by the fact that the MSC cites three cases involving district court costs orders, and all three involve the federal court relying upon a state statute or local rule. In *Simulnet East Assocs. v. Ramada Hotel Operating Co.*, the Court had adopted Nevada's statute as the applicable procedure. *Id.* at 574; *see also* Nev. Rev. Stat. § 18.130. In that case, the Ninth Circuit reversed the order, stating that the court knew the plaintiffs could not post the bond and therefore the order, "[i]n practical effect… amounted to a judgment as a matter of law." *Simulnet*, 37 F.3d at 576.

In *In re Merrill Lynch Relocation Mgmt., Inc.*, the case was pursuant to a now repealed Oregon statute. 812 F.2d 1116, 1116 (9th Cir. 1987); *see also* Or. Rev. Stat. § 20.160. In *Aggarwal v. Ponce Sch. of Med.*, the question centered around the application of Rule 5 of the Local Rules of the District of Puerto Rico. 745 F.2d 723, 724–25 (1st Cir. 1984). Here, the First Circuit vacated because the district court failed to properly consider the Plaintiff's ability to pay the bond. *Id.* at 727–28.

Historically, Florida did have a statute that imposed a requirement for nonresidents to post a bond. Fla. Stat. § 57.011 required nonresidents to post a bond of $100, however this statute was repealed in 2016. *See* ch. 2016–43, § 1, Laws of Fla. Even if this statutory requirement still applied, Defendant asks for **800 times** the amount.

### 2. DEFENDANT'S MOTION IS UNCONSTITUTIONAL

The Florida Constitution provides that "[t]he courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." Fla. Const. art. I, § 21. The Supreme Court of Florida has held that a bond requirement is unconstitutional where it infringes on the plaintiff's fundamental right of access to the courts.

3

*Psychiatric Assocs. v. Siegel*, 610 So. 2d 419, 419–20 (Fla. 1992). "The constitutional right of access to the courts sharply restricts the imposition of financial barriers to asserting claims or defenses in court." *Id.* at 424. In direct opposition to the Supreme Court's long held stance on bond requirements, the MSC tries to leverage the very fact that Plaintiff is already financially burdened in order to support its demand.

The MSC first attempts to argue that Plaintiff cannot afford the current litigation as it stands, then proceeds to plead that the imposition of an $80,000 bond would not bar Plaintiff from pursuing his claims. MSC at 9, 13. These two stances are incompatible. Defendant concedes that Plaintiff's bankrupt status and admittedly strained financial position give rise to a very real access to court barrier. If the barrier already exists, making it higher would only serve to block Plaintiff's right to due process. Such barriers arising out of the Plaintiff's circumstances are unavoidable. Barriers constructed arbitrarily by the court are not.

### 3. DEFENDANT'S MOTION FAILS TO APPLY THE APPROPRIATE STANDARDS

Even assuming, arguendo, that the MSC identified a legal basis for the requirement of a bond, it fails to correctly apply the standards endorsed by the case law it relies upon. The MSC cites *Aggarwal* a total of eight times to build its foundation, though it does not seem to appreciate the holding of the court. Given the fact that the MSC appears to bank its entire premise on that single opinion, the standards endorsed by the First Circuit should be considered properly.

In *Aggarwal,* the Court outlined in detail the standards that shall be applied when considering the application of D.P.R.L.R. 5 – a local rule that governed the bond requirement of nonresidents. 745 F.2d 723, 727 (1st Cir. 1984). The Court highlighted the necessary consideration of three factors, with the first being "the degree of probability/improbability of success on the merits, and the background and purpose of the suit." *Id.* Notably, the MSC lacks any consideration of the probability of success on the merits. It is completely devoid of

4

any analysis that may lead the court to make an early determination on the probability of success by the Plaintiff. At best, it makes vague, baseless, and unsupported assertions regarding the supposedly personal nature of this dispute. MSC at 13.

The second factor illuminated by the First Circuit is "the reasonable extent of the security to be posted, if any, viewed from the defendant's perspective." *Aggarwal,* 745 F.2d at 727. Here, the MSC fails to adequately establish the basis for the requested amount with any specificity. Defendant attaches no declaration, no cost breakdown or list of expected depositions and why they will be required. The MSC makes conclusory statements regarding the expected cost of litigation, placing repeated emphasis on the fact that Plaintiff is a nonresident. As the MSC did not specify why this factor should necessarily increase expected costs incurred by Defendant, it is impossible to precisely respond. Still, in principle, Plaintiff disagrees with this assumption.

At this stage, the only witness Plaintiff intends to depose is the Defendant. The First Amended Complaint (ECF No. 8) ("FAC") points to a vast landscape of contemporaneous documentary evidence, and not once does it rely upon evidence that would require further third-party testimony. Defendant's Motion to Dismiss (ECF No. 16) ("MTD") even admits that "the statements identified in the Amended Complaint arise from publicly known events." MTD at 7. Having characterized the case as turning on publicly known events, Defendant cannot now attempt to justify an $80,000 bond by invoking vague unidentified discovery burdens.

Finally, and perhaps most importantly, the First Circuit's third factor required the court to consider "the reasonable extent of the security to be posted, if any, viewed from the nondomiciliary plaintiff's perspective." *Aggarwal,* 745 F.2d at 727. Plaintiff's financial position is undisputed. Defendant argues that Plaintiff cannot afford to proceed with the litigation **absent a bond**. MSC at 9. It is impossible to square this argument with the notion that a bond would not irrevocably deny Plaintiff's access to the court. The core principle that

5

guided *Aggarwal* was the idea that the imposition of a bond should not occur without considering the plaintiff's ability to pay: "[T]oll-booths cannot be placed across the courthouse doors in a haphazard fashion." 745 F.2d at 727. It should be difficult to conclude a bond requirement would not cause a direct conflict with this philosophy, even if the request had a statutory basis. In alignment with this ideal, Puerto Rico's current civil procedure regarding the posting of bond by nonresidents takes the plaintiff's solvency into consideration. *See* P.R. R. Civ. P. 69.5 (providing that no bond shall be required where the party is insolvent and expressly exempted by law from payment of filing fees).

Considering that the MSC fails to understand how to correctly apply the standards demanded by the First Circuit, it is perhaps not surprising that Defendant's other cited opinion also acknowledged the wisdom contained within *Aggarwal* and appears to stand in opposition to Defendant's request. In *Simulnet East Assocs. v. Ramada Hotel Operating Co.*, the Court stressed that "[i]n requiring a security bond for defendants' costs, care must be taken not to deprive a plaintiff of access to the federal courts." *Simulnet*, 37 F.3d at 575. With the Plaintiff's financial position considered appropriately, the court should exercise its discretion and abstain from granting a request for a bond.

### 4. DEFENDANT'S MOTION WAS MADE IN BAD FAITH

Immediately upon filing his MSC, Defendant took to social media to announce the filing and used it to promote his hot sauce company. *See* Declaration of Karl Jobst ¶ 3–4, Exh. A–B. Defendant is being sued for unauthorized use of name or likeness. In light of such a claim, Defendant's insistence on continuing to use Plaintiff's name, likeness, and this litigation for commercial purposes is instructive.

In response to Defendant's X post commercializing the MSC, Defendant's counsel posted a reply boasting that she was "giggling in her office chair" while submitting the filing. *Id.* ¶ 7, Exh. D. Defendant's counsel also publicly bragged that the "internet is going to rave over" her Motion to Dismiss. *Id.* ¶ 8, Exh. E. Further, Defendant opposed a reasonable

request for extension of time to file this opposition. *Id.* ¶ 9, Exh. F. Naturally, it is the right of a party to oppose a request for an extension. However, Defendant pleads to the court to impose a bond, in part, due to Plaintiff's logistical concerns, while simultaneously refusing to entertain a reasonable request. Plaintiff is of the belief that Defendant's decision to file two concurrent motions while counsel 'giggles', without allowing any leeway given Plaintiff's pro se and foreign status, is illustrative of the bad faith nature of Defendant's strategy.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter an Order denying Defendant's Motion for Security for Costs.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 15th day of June 2026, I caused the foregoing document to be filed with the Clerk of Court at the Clerk's Office. I further certify that a true and correct copy of the foregoing document was served on Defendant's counsel by email at mtmitchell@jambg.com and cintron@jambg.com on the same date.

Dated: June 15, 2026

Respectfully submitted,

Karl Jobst
32 Ventura Street
Pallara, QLD, Australia 4110
Karljobstgaming@gmail.com
+61 432 597 334
Pro Se Plaintiff

7