UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE #: 0:26-cv-60997-DSW

KARL JOBST,

     Plaintiff,

vs.

WILLIAM JAMES MITCHELL,

     Defendant,

_____/

## DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SECURITY FOR COSTS

Defendant, William James Mitchell, by and through undersigned counsel, files this Reply in further support of his Motion for Security for Costs and states as follows:

### I.  INTRODUCTION

Plaintiff's Opposition rests on a fundamental misstatement of the law. Plaintiff argues that his financial condition categorically shields him from a cost bond and that, in the absence of an express federal rule, this Court lacks authority to require one. Both propositions are incorrect.

Federal courts possess inherent authority to require security for costs to protect the integrity of their proceedings and to ensure that prevailing parties are not left without recourse. That authority is routinely exercised where, as here, a non-resident plaintiff presents a substantial risk of non-payment.

Plaintiff's reliance on state-law concepts and the Erie doctrine is therefore misplaced.

Nor does *Aggarwal* support Plaintiff's position. That decision does not create a safe harbor for indigent litigants; it reflects a case-specific equitable balancing that expressly considers whether a plaintiff has engaged in abusive or harassing litigation conduct. This case presents the opposite circumstance. Plaintiff is a foreign judgment debtor who is actively in bankruptcy as a result of a substantial defamation judgment entered against him in favor of Defendant. Rather than an innocent litigant seeking access to the courts, Plaintiff seeks to pursue additional litigation against the same defendant while disclaiming any ability to satisfy an adverse cost award.

Plaintiff's admitted insolvency, combined with his foreign residency, creates a substantial and foreseeable risk that any cost judgment entered by this Court would be effectively uncollectible absent security. That is precisely the circumstance in which courts require a bond.

Accordingly, and as set forth below, the Court should grant Defendant's Motion for Security for Costs.

## II.    THE COURT HAS INHERENT AUTHORITY TO REQUIRE SECURITY FOR COSTS

Plaintiff's Opposition rests on the premise that, in the absence of an express Federal Rule of Civil Procedure authorizing security for costs, this Court lacks authority to require a bond. That premise is incorrect.

Federal courts possess inherent authority, grounded in federal common law, to manage their proceedings and to protect the integrity of the judicial process. *See* Chambers v. NASCO, Inc., 501 U.S. 32, 43–46 (1991). This authority exists independently of any specific rule or state-law analogue and includes the discretion to require security for costs in appropriate circumstances. Courts routinely exercise this authority to ensure that prevailing parties are not left without recourse. *See, e.g.,* Simulnet East Associates v. Ramada Hotel Operating Co., 37 F.3d 573, 574 (9th Cir. 1994).

Plaintiff's reliance on the Erie doctrine does not alter this analysis. Erie governs the application of substantive state law in diversity cases; it does not restrict a federal court's inherent authority to control its own proceedings. *See* Hanna v. Plumer, 380 U.S. 460, 464–65 (1965). The requirement of a cost bond is a procedural mechanism designed to protect against the practical risk of non-payment, not a substantive rule of decision derived from state law. Accordingly, Plaintiff's state-law-centric argument is misplaced.

Courts have consistently recognized that requiring security for costs is particularly appropriate where a plaintiff is a non-resident or otherwise presents a heightened risk of non-payment. *See In re Merrill Lynch Relocation Mgmt., Inc., 812 F.2d 1116, 1121 (9th Cir. 1987).* That risk is plainly present here. Plaintiff is a foreign resident who has affirmatively asserted that he lacks the financial ability to satisfy an adverse cost award. In such circumstances, the imposition of a bond is not extraordinary; it is a routine and necessary safeguard.

Accordingly, this Court has both the authority and the discretion to require Plaintiff to post security for costs.

### III.   PLAINTIFF MISPLACES RELIANCE ON *AGGARWAL*, WHICH DOES NOT SHIELD HIM FROM A COST BOND

A. *Aggarwal* Does Not Create a Financial Safe Harbor

Plaintiff relies heavily on *Aggarwal* to argue that his financial condition automatically shields him from a cost bond requirement. That is not what *Aggarwal* holds. Rather than establishing a categorical exemption for indigent litigants, *Aggarwal* reflects a case-specific equitable balancing that expressly considers whether a plaintiff has engaged in abusive or harassing litigation conduct. *See Aggarwal v. Ponce Sch. of Med.*, 745 F.2d 723, 728 (1st Cir. 1984).

Critically, *Aggarwal* limits its protection to circumstances where there is "no history of the persistent pursuit of fruitless litigation… nor any demonstrated track record of harassment or the like." *Id.* Plaintiff's reading ignores this limitation and attempts to transform a discretionary equitable analysis into a rule of automatic immunity. The decision does not support that result.

B. This Case Presents the Opposite Circumstances Addressed in *Aggarwal*

This case presents the exact opposite landscape contemplated in *Aggarwal*. A court of record has already found that Plaintiff engaged in a sustained campaign against Defendant, acting as a "crusader" with a documented "agenda of destroying Mr. Mitchell's reputation and punishing him." *Mitchell v. Jobst* [2025] QDC 41, ¶¶ 532–533.

Plaintiff's current financial condition is not an independent or blameless hardship. It is the direct consequence of a substantial defamation judgment—approximately $990,000 AUD—entered against him in favor of Defendant for that very conduct. Plaintiff is now in bankruptcy as a result of that judgment, yet seeks to initiate additional litigation against the same Defendant while disclaiming any ability to satisfy an adverse cost award.

These circumstances fall squarely outside the equitable considerations described in *Aggarwal*. This is not a case involving an innocent litigant seeking access to the courts; it involves a foreign judgment debtor attempting to pursue successive litigation against his primary creditor without financial accountability.

### C. *Aggarwal* Does Not Protect Strategic Judgment Debtors or Successive Litigation Against the Same Defendant

Properly understood, *Aggarwal* protects indigent litigants from being unfairly excluded from the courts where equity favors access. It does not authorize a plaintiff to leverage insolvency as both a sword and a shield, pursuing claims while avoiding the risk of an adverse cost award.

Here, Plaintiff's position would invert that principle. Under his theory, a litigant who has already been adjudicated liable, remains subject to a substantial unpaid judgment, and resides outside the jurisdiction could initiate successive litigation against the same defendant without any meaningful financial exposure.

That is precisely the circumstance in which courts exercise their discretion to require security for costs.

Accordingly, Plaintiff's reliance on *Aggarwal* is misplaced, and the equitable considerations identified in that decision weigh decisively in favor of requiring a bond in this case.

### IV. PLAINTIFF'S FINANCIAL STATUS WEIGHS IN FAVOR OF REQUIRING SECURITY FOR COSTS

Plaintiff argues that his financial condition weighs against the imposition of a cost bond. The opposite is true. Plaintiff's admitted insolvency, combined with his foreign residency, creates a substantial and foreseeable risk that any cost award entered by this Court would be effectively uncollectible absent security.

Courts routinely consider a plaintiff's inability to satisfy a potential cost judgment as a factor supporting, rather than defeating, the imposition of a bond. *See, e.g., Simulnet East Assocs. v. Ramada Hotel Operating Co.*, 37 F.3d 573, 574 (9th Cir. 1994) (requiring non-resident plaintiff to post security for costs); *Hawes v. Club Ecuestre El Comandante*, 535 F.2d 140, 145 (1st Cir. 1976) (affirming imposition of bond where plaintiff's financial condition created risk of non-payment).

Where a plaintiff acknowledges that he lacks the financial means to pay an adverse award, the risk to the defendant is not speculative—it is certain. In such circumstances, requiring security for costs serves the core purpose of protecting the defendant from being forced to incur unrecoverable litigation expenses. *See*

*Aggarwal v. Ponce Sch. of Med.*, 745 F.2d 723, 727–28 (1st Cir. 1984) (recognizing cost bonds as a tool to protect defendants from undue prejudice).

That risk is heightened here. Plaintiff resides in Australia and is currently in bankruptcy. Any effort to enforce a cost judgment would therefore require recognition and enforcement proceedings in a foreign jurisdiction, with attendant legal fees, procedural hurdles, and delays. These are not hypothetical concerns— they are the predictable and unavoidable consequences of Plaintiff's residency and financial condition.

Plaintiff's position would effectively eliminate any meaningful protection for defendants in cases involving insolvent foreign plaintiffs. Under his theory, a plaintiff could pursue litigation without financial capacity to satisfy an adverse award, leaving the defendant to bear the full cost of defense regardless of outcome. That is precisely the scenario that security-for-costs orders are designed to prevent.

Accordingly, Plaintiff's financial condition does not weigh against requiring a bond. It is the very reason a bond is necessary in this case.

## V.    THE REQUESTED BOND IS REASONABLE

Plaintiff contends that the requested $80,000 bond is excessive and unsupported. That argument ignores both the discretionary nature of security-for-costs orders and the practical realities of this case.

Courts are not required to calculate costs with precision at the outset of litigation when determining an appropriate bond. Rather, they may estimate reasonably anticipated costs based on the nature and scope of the case. *See, e.g., Simulnet East Assocs. v. Ramada Hotel Operating Co.*, 37 F.3d 573, 574 (9th Cir. 1994) (imposing security for costs based on anticipated litigation expenses); *Hawes v. Club Ecuestre El Comandante*, 535 F.2d 140, 143 (1st Cir. 1976) (approving bond requirement based on risk and expected costs).

Here, Plaintiff has initiated a federal defamation action involving extensive alleged statements across multiple platforms, which will necessarily require document discovery, depositions, and motion practice. Plaintiff's suggestion that the case will involve minimal discovery is speculative and contrary to the breadth of his own allegations. Courts routinely account for such uncertainty when setting a bond, particularly at the early stages of litigation.

In addition, Plaintiff ignores a critical and case-specific cost driver: enforcement. Because Plaintiff resides in Australia and is currently in bankruptcy, any cost judgment entered by this Court would likely require recognition and enforcement proceedings in a foreign jurisdiction. That process, whether through applicable treaty mechanisms or Australian domestic law, entails additional legal proceedings, retention of foreign counsel, and significant administrative expense. These foreseeable costs materially increase Defendant's exposure and further justify the requested security.

Moreover, the requested amount reflects not only anticipated litigation costs, but also the heightened risk that those costs will be unrecoverable absent security. Courts have repeatedly recognized that security for costs serves to protect defendants from precisely this type of financial prejudice. *See Aggarwal v. Ponce Sch. of Med.*, 745 F.2d 723, 727–28 (1st Cir. 1984).

Finally, even if the Court were to conclude that the precise amount requested should be adjusted, that does not warrant denial of the motion. At a minimum, the Court should require Plaintiff to post a reasonable bond in an amount it deems appropriate under the circumstances.

Accordingly, the requested bond is reasonable and should be imposed.

## VI.   PLAINTIFF'S REMAINING ARGUMENTS ARE IRRELEVANT TO THE LEGAL STANDARD

Plaintiff devotes a substantial portion of his Opposition to allegations concerning social media posts, counsel's conduct, and other purportedly "bad faith" behavior. These arguments are misplaced.

The question before the Court is whether security for costs is warranted based on the risk of non-payment and the equities of the case. Plaintiff's references to online commentary, tone, or perceived litigation conduct have no bearing on that analysis. Courts evaluating motions for security for costs do not adjudicate collateral disputes regarding speech or counsel conduct; they assess practical considerations such as residency, financial capacity, and the likelihood of cost recovery.

Even if Plaintiff's characterizations were accepted as true, they would not alter the fundamental facts: Plaintiff is a foreign resident, is currently in bankruptcy, and has disclaimed the ability to satisfy an adverse cost award. Those facts, not Plaintiff's subjective grievances, control the outcome of this motion.

Accordingly, Plaintiff's remaining arguments are irrelevant and provide no basis to deny the requested relief.

## VII.   CONCLUSION

Plaintiff's Opposition confirms, rather than refutes, the need for security in this case. Plaintiff is a foreign resident, is currently in bankruptcy, and has expressly disclaimed the ability to satisfy an adverse cost award. At the same time, he seeks to pursue litigation against the very party that holds a substantial outstanding judgment against him, arising from the same course of conduct.

The governing law does not require a defendant to absorb the full cost of defending such claims without any realistic prospect of recovery. To the contrary, courts exercise their discretion to require security precisely in these circumstances... where the risk of non-payment is concrete, foreseeable, and unavoidable.

Plaintiff's attempt to transform financial hardship into categorical immunity from a cost bond finds no support in the law. Nor does *Aggarwal* shield a litigant who has already been adjudicated liable for similar conduct and now seeks to proceed without financial accountability. Accepting Plaintiff's position would

effectively permit an insolvent, foreign plaintiff to litigate without consequence, shifting all financial risk onto the defendant regardless of outcome.

That is not the law, and it is not equitable.

Accordingly, Defendant respectfully requests that the Court grant the Motion for Security for Costs and require Plaintiff to post an appropriate bond as a condition of proceeding in this action.

**WHEREFORE**, Defendant respectfully requests that this Court grant his Motion for Security for Costs and require Plaintiff to post a bond in the amount of $80,000 as a condition of proceeding in this action. In the alternative, Defendant requests that the Court impose a reasonable bond in an amount it deems appropriate and grant such other and further relief as the Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of June 2026, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system or by email to all parties. I further certify that I either mailed the foregoing document and the Notice of Electronic Filing by first class mail to any non CM/ECF participants and/or the foregoing document was served via transmission of Notice of Electronic Filing generated by CM/ECF to any and all active CM/ECF participants.

*/s/ Michele T. Mitchell*
Michele T. Mitchell
FLA. BAR NO. 1048843
***Counsel for Defendant***
***963 Azure Lane***
***Weston, FL 33326***
*(Pending Order on Motion to Substitute Counsel)*

**Primary Service:**          michele@mtam.law

## SERVICE LIST

**KARL JOBST**
**Pro Se Plaintiff**
32 Ventura Street
Pallara, QLD, Australia 4110
Phone : +61 432 597 334
karljobstgaming@gmail.com

---

Michele T. Mitchell, Esq.
**Counsel for Defendant**
*(Pending Order on Motion to Substitute Counsel)*
963 Azure Lane
Weston, FL 33326
michele@mtam.law