UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE #: 0:26-cv-60997-DSW

KARL JOBST,

      Plaintiff,

vs.

WILLIAM JAMES MITCHELL,

      Defendant,

_____/

### DEFENDANT'S AMENDED REPLY IN SUPPORT OF MOTION TO DISMISS

Defendant, WILLIAM JAMES MITCHELL ("Defendant"), by and through undersigned counsel, respectfully files this Amended Reply in Support of his Motion to Dismiss Plaintiff's First Amended Complaint. For the reasons below and in Defendant's Motion to Dismiss, the First Amended Complaint fails to state a claim and should be dismissed with prejudice.

### I.      INTRODUCTION

This case turns on legal sufficiency, not the volume of allegations. Plaintiff's Opposition attempts to recast that inquiry as a dispute over factual detail, but Rule 12(b)(6) requires the opposite analysis. A motion to dismiss tests whether a complaint states a legally cognizable claim, not whether it contains an extensive narrative or a compilation of alleged facts.

Plaintiff's assertion that Defendant's Motion "fails to engage" with the First Amended Complaint misstates the governing standard. Defendant's Motion accepts Plaintiff's well-pleaded allegations as true and demonstrates that, even so, the challenged statements are not actionable as a matter of law. The Motion addresses the challenged statements and applies controlling law showing they constitute protected opinion, rhetorical hyperbole, and non-literal expression.

Plaintiff's Opposition attempts to convert a legal sufficiency inquiry into a factual dispute. Even accepting Plaintiff's allegations as true, they do not plausibly establish falsity, actual malice, or any actionable use of likeness, nor can additional detail transform protected commentary, criticism, or parody into tort liability.

Because Plaintiff's claims fail as a matter of law, the First Amended Complaint should be dismissed.

## II.	THE STATEMENTS REMAIN NON-ACTIONABLE AS A MATTER OF LAW
### A.  Plaintiff's Allegations Do Not Convert Non-Actionable Opinion Into Actionable Fact

Plaintiff's Opposition relies heavily on the volume and specificity of alleged statements, but the inclusion of detail does not transform non-actionable expression into actionable defamation. The relevant inquiry is not whether Plaintiff has identified numerous statements or provided contextual background, but whether those statements are capable of being proven true or false as assertions of fact.

To state a claim for defamation, a plaintiff must allege a false statement of fact that is objectively verifiable. Statements that reflect subjective interpretation, characterization, or evaluative judgment are not actionable, even where they are expressed in strong or unfavorable terms. See *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19–20 (1990).

Here, the challenged statements arise from Defendant's commentary on a publicly documented and ongoing dispute concerning Plaintiff's litigation, fundraising activities, and related conduct. Plaintiff's Opposition attempts to reframe these statements as concrete factual assertions by emphasizing surrounding details, including timelines, financial figures, and references to third-party materials. But the presence of underlying facts does not eliminate the inherently interpretive nature of the challenged statements.

Courts recognize that language such as "fraud," "scam," or similar characterizations, particularly when used in the context of public commentary and dispute, can constitute non-actionable opinion where those terms reflect a speaker's interpretation of disclosed or disputed facts rather than a literal accusation of provable misconduct.  See *Turner v. Wells*, 879 F.3d 1254, 1262-63 (11th Cir. 2018). The dispositive question is how a reasonable reader would understand the statement in context, not whether the plaintiff disputes the characterization.

Plaintiff's allegations themselves confirm that the underlying events were subject to competing interpretations. Plaintiff acknowledges that his disclosures regarding litigation and fundraising were, at times, incomplete, evolving, or later clarified. In that context, Defendant's statements reflect disagreement with Plaintiff's characterization of those events and draw inferences from publicly available information. Such statements are not susceptible to being proven true or false in the manner required to sustain a defamation claim.

Accordingly, Plaintiff cannot manufacture a claim by repackaging interpretive commentary as factual assertion. Even accepting Plaintiff's allegations as true, the challenged statements remain non-actionable as a matter of law.

B.  Context Forecloses Defamation Liability

Even where language could, in isolation, be construed as factual, courts must evaluate the challenged statements in their full context, including the medium, tone, and surrounding circumstances in which they were made. See *Milkovich*, 497 U.S. at 20; *Horsley v. Rivera*, 292 F.3d 695, 701 (11th Cir. 2002). When viewed in context, the statements at issue here are not actionable as a matter of law.

The challenged statements arise from online videos, social media posts, and related commentary concerning an ongoing and highly public dispute between the parties. This is not a formal setting in which precise factual assertions are expected, but rather a forum characterized by advocacy, criticism, and rhetorical expression. In such contexts, audiences anticipate exaggerated, informal, and opinionated language, not carefully qualified statements of objective fact.

Plaintiff's Opposition attempts to isolate particular words—such as "fraud" or similar characterizations—and treat them as literal assertions divorced from their surrounding context. But courts have consistently rejected that approach. The meaning of a statement cannot be determined by parsing individual words in isolation; instead, it must be assessed from the perspective of a reasonable viewer encountering the statement in its full context. *Horsley*, 292 F.3d at 701.

Here, the broader context makes clear that the challenged statements reflect Defendant's perspective on a contested set of events involving litigation, fundraising, and related conduct. The statements were made in the course of an adversarial exchange, in which both parties publicly advanced competing narratives and interpretations. In that setting, a reasonable audience would understand the statements as part of an ongoing dispute—not as definitive, verifiable assertions of fact.

The nature of the content further reinforces this conclusion. The allegations include references to exaggerated imagery, mocking commentary, and stylized depictions that are plainly non-literal. For example, the Plaintiff pleads that a social media post by the Defendant in all capital letters with the words "LIED FOR FOUR YEARS, SCAMMED $200,000" and a photo of the President of the United States mocking a disabled person during his 2016 campaign constitutes a defamatory statement. FAC at 32. Such expression signals to the audience that the speaker is engaging in

criticism and commentary, not making objective factual representations. Courts routinely hold that this type of rhetorical and expressive content is not actionable.

Ultimately, Plaintiff's claims depend on disregarding the context in which the statements were made. When that context is properly considered, the statements at issue are understood as opinion, interpretation, and rhetorical hyperbole arising from a public dispute. As such, they cannot support a claim for defamation as a matter of law.

C.  Even Plaintiff's Own Allegations Fail to Establish Falsity or Actual Malice

Plaintiff's Opposition relies heavily on selected factual narratives, including references to a trustee report, litigation history, and Plaintiff's own public statements, in an effort to establish falsity and actual malice. But even accepting those allegations as true, they do not plausibly support either element.

First, Plaintiff's reliance on the trustee report does not establish falsity. At most, Plaintiff alleges that a third party did not identify wrongdoing at a particular stage of an ongoing process. That allegation does not constitute a definitive adjudication of fact, nor does it render Defendant's statements false as a matter of law. The absence of a formal finding of wrongdoing is not equivalent to a finding that the underlying conduct was proper, and Plaintiff's attempt to equate the two reflects precisely the type of interpretive disagreement that cannot sustain a defamation claim.

Second, Plaintiff's own public statements confirm that the underlying events were subject to evolving explanations, incomplete disclosures, and competing interpretations. Plaintiff acknowledges that certain details were not fully disclosed, that aspects of his communications were later clarified, and that his public narrative developed over time. He further admits that he did not disclose certain information, including the details of a settlement offer, and has offered shifting

accounts regarding litigation costs and funding. These allegations demonstrate that the subject matter at issue was not fixed or objectively verifiable, but instead involved a developing and contested narrative.

In that context, Defendant's statements reflect interpretations and inferences drawn from publicly available, but admittedly incomplete, information. Disagreement with Plaintiff's characterization of those events, or criticism based on perceived inconsistencies or lack of transparency, does not transform such commentary into false statements of fact. Rather, it underscores that the parties were advancing competing views of disputed circumstances.

Nor do Plaintiff's allegations plausibly establish actual malice. Allegations that Defendant continued to express criticism after reviewing certain materials, or that Defendant disagreed with Plaintiff's interpretation of those materials, do not demonstrate subjective knowledge of falsity or reckless disregard for the truth. Personal animosity, persistent critical repetition, or a simple disagreement over the import of underlying documents cannot satisfy the strict subjective standard required to show conscious doubt. See *Reed v. Chamblee*, No. 24-10058, 2025 WL 1874638, at 3 (11th Cir. July 8, 2025) (reaffirming that formulaic recitations of malice, personal ill-will, or adversarial hostility are structurally insufficient to support an inference of actual malice under the Twombly/Iqbal pleading standard). Where the underlying facts are themselves subject to interpretation and dispute, continued commentary, even if critical or unfavorable, does not give rise to a plausible inference of actual malice.

Ultimately, Plaintiff's theory depends on collapsing a complex, evolving factual landscape into a single, definitive version of events and then treating any deviation from that version as defamatory. The law does not permit such a result. Because Plaintiff's own allegations demonstrate

ambiguity, interpretation, and ongoing dispute, they fail to establish falsity or actual malice as a matter of law.

### III. PLAINTIFF'S CLAIMS FAIL REGARDLESS OF THE APPLICABLE FAULT STANDARD

Plaintiff contends that he is not a public figure and therefore need not plead actual malice. However, Plaintiff pleads in the Amended Complaint that he "operates a widely viewed YouTube channel with over 1 million subscribers and substantial viewership." FAC at 1. Moreover, Plaintiff's own allegations describe a public dispute involving litigation, fundraising efforts directed to a broad audience, and extensive online commentary. Plaintiff also voluntarily injected himself into that controversy by soliciting public funds, making public statements regarding the underlying events, and engaging in ongoing public discourse concerning those matters. Plaintiff even pleads a specific video published by him on August 11, 2025, concerning the public dispute at issue in this case. FAC at 31.

But even assuming arguendo that Plaintiff is a private figure and need only allege negligence, the claims still fail. As set forth above, the challenged statements are non-actionable as a matter of law because they constitute opinion, rhetorical hyperbole, and interpretation of disputed facts. Where statements are not capable of being proven true or false, the level of fault is irrelevant.

Moreover, Plaintiff's own allegations foreclose any plausible inference of fault under either standard. The allegations reflect an evolving and disputed set of facts, coupled with Plaintiff's own acknowledgment that his public disclosures were incomplete or later clarified. In that context, Defendant's commentary cannot plausibly be characterized as negligent, much less as made with knowledge of falsity or reckless disregard for the truth.

Accordingly, regardless of whether Plaintiff is deemed a public figure or private figure, the First Amended Complaint fails to state a claim.

## IV.    THE LIKENESS CLAIM STILL FAILS AS A MATTER OF LAW

Plaintiff's claim for unauthorized use of likeness fails because the Amended Complaint does not plausibly allege a use of Plaintiff's identity "for purposes of trade or for any commercial or advertising purpose" within the meaning of Florida law. § 540.08(1), Fla. Stat.

Florida law draws a clear distinction between the use of a person's identity to directly promote a product or imply endorsement, and the use of that identity within expressive content. The former may be actionable; the latter is not. See *Tyne v. Time Warner Entm't Co.*, 901 So. 2d 802, 808–10 (Fla. 2005). The statute does not apply where a person's name or likeness is used as part of commentary, criticism, or other expressive works, even if those works are distributed through monetized platforms. See *Lane v. MRA Holdings, LLC*, 242 F. Supp. 2d 1205, 1212-13 (M.D. Fla. 2002).

Here, Plaintiff's allegations confirm that the challenged uses arise from Defendant's commentary regarding Plaintiff's conduct and the surrounding public controversy. The Amended Complaint does not plausibly allege that Defendant used Plaintiff's identity to suggest Plaintiff's sponsorship, approval, or endorsement of any product. Instead, Plaintiff alleges that references to his name and likeness appeared in connection with videos, posts, and related content criticizing Plaintiff. Such uses fall squarely within protected expressive activity.

Plaintiff's reliance on discount codes and references to products does not alter this conclusion. The mere fact that expressive content is associated with revenue-generating activity does not transform otherwise protected expression into a commercial use under the statute. The allegations

do not plausibly suggest that Plaintiff's identity was used as a stand-alone commercial asset or to directly advertise a product. Rather, any such references are incidental to Defendant's broader commentary and criticism.

Because the alleged uses arise in the context of expressive content and do not plausibly suggest endorsement or commercial exploitation independent of that expression, Plaintiff's claim under § 540.08 fails as a matter of law.

## V. THE IIED CLAIM FAILS AS A MATTER OF LAW

Plaintiff's claim for intentional infliction of emotional distress independently fails because the alleged conduct does not meet the demanding standard required under Florida law.

To state a claim for IIED, a plaintiff must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985). This standard is exacting, and Florida courts routinely dismiss claims based on insulting, offensive, or even distressing speech that falls short of this threshold.

Here, Plaintiff's allegations are based entirely on Defendant's public commentary, criticism, and expressive content concerning Plaintiff and an ongoing dispute. Plaintiff points to mocking statements, critical characterizations, and exaggerated or satirical depictions. But as a matter of law, such conduct—even if harsh, offensive, or embarrassing—does not rise to the level of "extreme and outrageous" behavior required to sustain an IIED claim.

Courts consistently reject attempts to transform speech-based claims into IIED liability where the alleged distress arises from the content of protected expression. Plaintiff's allegations describe precisely that type of conduct: public criticism and commentary, conveyed through online

platforms in the context of an adversarial dispute. The law does not permit liability based on such expression.

The claim fails for an additional reason. Plaintiff's IIED allegations are based on the same underlying publications and statements that form the basis of his defamation claims. Florida law does not permit a plaintiff to recast the same alleged conduct into multiple torts to recover for the same injury. See *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208–09 (Fla. 4th DCA 2002). Because the alleged emotional distress arises from the same speech at issue in the defamation counts, the claim is duplicative and barred as a matter of law.

Accordingly, Plaintiff's claim for intentional infliction of emotional distress should be dismissed.

## VI.  THE AMENDED COMPLAINT CONSTITUTES AN IMPERMISSIBLE SHOTGUN PLEADING

Although Plaintiff contends that the Amended Complaint provides sufficient clarity, it nonetheless reflects the type of pleading deficiencies the Eleventh Circuit has repeatedly condemned. In particular, each defamation count broadly incorporates prior allegations, resulting in overlapping and duplicative claims based on the same underlying publications. See *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015).

This incorporation obscures which allegations support each count and forces Defendant and the Court to sift through the pleading to determine each claim's basis. Such pleading practices undermine the notice function of Rule 8 and impede the orderly resolution of the case.

At a minimum, if the Court does not dismiss the claims on the merits, it should require Plaintiff to replead in a manner that clearly isolates the specific statements and factual allegations supporting each count.

## VII.    CONCLUSION

**WHEREFORE**, Defendant respectfully requests that the Court grant the Motion to Dismiss and dismiss the First Amended Complaint with prejudice, or alternatively dismiss the deficient claims and require Plaintiff to replead any remaining claims in a more definite statement, together with such further relief as the Court deems just and proper.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of June 2026, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system or by email to all parties. I further certify that I either mailed the foregoing document and the Notice of Electronic Filing by first class mail to any non CM/ECF participants and/or the foregoing document was served via transmission of Notice of Electronic Filing generated by CM/ECF to any and all active CM/ECF participants.

*/s/Michele T. Mitchell*
Michele T. Mitchell
FLA. BAR NO. 1048843
***Counsel for Defendant***
***963 Azure Lane***
***Weston, FL 33326***
*(Pending Order on Motion to Substitute Counsel)*

**Primary Service:**                michele@mtam.law

## <u>SERVICE LIST</u>

**KARL JOBST**
**Pro Se Plaintiff**
32 Ventura Street
Pallara, QLD, Australia 4110
Phone : +61 432 597 334
karljobstgaming@gmail.com

---

Michele T. Mitchell, Esq.
**Counsel for Defendant**
*(Pending Order on Motion to Substitute Counsel)*
963 Azure Lane
Weston, FL 33326
michele@mtam.law