UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE #: 0:26-cv-60997-KMM

KARL JOBST,

Plaintiff,

vs.

WILLIAM JAMES MITCHELL,

Defendant,
_____________________/

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE AMENDED REPLY IN SUPPORT OF MOTION FOR SECURITY FOR COSTS [DE 43]**

Defendant William James Mitchell ("Defendant"), through undersigned counsel, responds in opposition to Plaintiff Karl Jobst's Motion to Strike [DE 43] (the "Motion to Strike"). The Motion should be denied because the Amended Reply [DE 41] addresses arguments Plaintiff raised in his Opposition [DE 20] and concerns facts and materials already placed in the docket record or presented in Defendant's opening Motion for Security for Costs [DE 17].

Plaintiff's Opposition challenged the Court's authority, invoked Erie, relied extensively on Aggarwal and its equitable factors, argued that Plaintiff's financial condition weighs against a bond, attacked the amount and the significance of foreign residency, and accused Defendant and counsel of bad faith. DE 20 at 1–7. The Amended Reply answered those subjects. It attached no new declaration or exhibit. That is rebuttal—not a new motion presented for the first time on reply.

The Motion to Strike then makes categorical factual assertions that Plaintiff's own filed materials directly contradict. Plaintiff tells the Court that he "has never commented on his ability to pay a cost award." DE 43 at 3. But in the August 11, 2025 video that Plaintiff placed at the center of the First Amended Complaint, he states: "I do not have $990,000. In fact, I have no money"; "because

I could not cover the judgment debt, I filed for voluntary bankruptcy"; and "I advised Billy that I could not pay the judgment." Karl Jobst, *My Final Lawsuit Update*, at 11:29, 11:50, 27:28 (YouTube, Aug. 11, 2025), https://www.youtube.com/watch?v=NsK4VMYEMSE, (the "August 11 Video"); FAC ¶¶ 19, 31. Exhibit 6 to Plaintiff's original Complaint is equally explicit: his counsel defined the entire AUD $990,945.57 obligation, including AUD $600,498.99 in costs, as the "Judgment Debt" and twice represented that Plaintiff lacked the financial means to satisfy it. Compl., Ex. 6, DE 1-1 at 33-34. Plaintiff may dispute the inference to be drawn concerning a future federal costs award, but he cannot fairly recast that documented record basis as a fabricated factual premise warranting the striking of an entire reply.

## I. GOVERNING STANDARD

Local Rule 7.1(c)(1) provides that a reply "shall be strictly limited to rebuttal of matters raised in the memorandum in opposition without reargument of matters covered in the movant's initial memorandum of law." The rule does not prevent a movant from answering an opposition merely because the answer necessarily discusses the subject of the opening motion.

The Southern District of Florida distinguishes impermissible new matter from material that responds to an opposition. *Intra-Lock Int'l, Inc. v. Choukroun*, No. 14-80930-CIV, 2015 WL 1268278, at *1–2 (S.D. Fla. Mar. 19, 2015) (denying motion to strike because reply material rebutted assertions raised in opposition); *Giglio Sub s.n.c. v. Carnival Corp.*, No. 12-21680-CIV, 2012 WL 4477504, at *2 (S.D. Fla. Sept. 26, 2012), aff'd, 523 F. App'x 651 (11th Cir. 2013) (reply facts may be considered where they rebut the opposition and do not raise a wholly new factual issue).

## II. THE CHALLENGED SECTIONS REBUT MATTERS RAISED IN THE OPPOSITION

### A. The Authority and Erie Discussion Answers Plaintiff's Threshold Argument.

Plaintiff opened his Opposition by asserting that the Motion for Security for Costs "cites no federal rule, binding authority, state statute or local rule" permitting the relief, and that "no applicable

state law or federal common law" supports it in this District. DE 20 at 1–2. Plaintiff then argued that security authority "usually stems from state practice or a local rule," analyzed the sources used in Defendant's authorities, and invoked an "unguided Erie" inquiry. *Id*. at 2–3.

Sections I and II of the Amended Reply directly answered that threshold argument by explaining Defendant's inherent-authority theory and why, in Defendant's view, Erie does not foreclose it. DE 41 at 1–3. Plaintiff's acknowledgment that district courts possess authority, qualified by his contention that the necessary source is absent here, did not remove the dispute. DE 20 at 3. The Reply was entitled to answer the operative proposition that this Court lacks an applicable source of authority. It did not introduce a different request for relief.

## B. The Aggarwal and Equitable-Context Discussion Was Invited by Plaintiff.

Plaintiff devoted approximately three pages to Aggarwal. He urged the Court to consider "the background and purpose of the suit," the amount from both parties' perspectives, Plaintiff's ability to pay, and the danger that a bond would deny access to court. DE 20 at 4–6. He also argued that his financial condition should cause the Court to "abstain" from imposing a bond. *Id*. at 6.

Section III of the Reply responded that Aggarwal requires case-specific equitable balancing rather than a categorical result based on insolvency, and addressed the litigation history already described in the opening Motion. DE 41 at 3–5. The phrase "financial safe harbor" summarized the practical consequence of Plaintiff's argument; it was not the attribution of a formal quotation. More importantly, once Plaintiff placed the background and purpose of the suit and the equities at issue, Defendant could answer with the record context he contends bears on those factors. That context was not new: the opening Motion stated that the debt arose from prior litigation between these same parties and quoted the Australian court's findings concerning Plaintiff's campaign against Defendant. DE 17 at 1, 12–13 & Ex. C.

### C. The Financial-Status, Amount, and Enforcement Sections Answer Plaintiff's Arguments.

Plaintiff argued that bankruptcy and financial strain weigh against security, that an $80,000 bond would bar access, that the requested amount lacked adequate support, and that Defendant did not explain why Plaintiff's foreign residency would increase expected costs. DE 20 at 2, 4–6. Sections IV and V of the Reply answered each point: they addressed nonpayment risk, the anticipated scope of the case, the reasonableness of an estimate at this stage, and the practical effect of enforcing a United States cost judgment against an Australian bankrupt. DE 41 at 5–7.

The Motion to Strike misreads the Reply's statement that Plaintiff "ignores" enforcement as an admission that enforcement had not been raised before. DE 43 at 2. The opening Motion expressly argued that any costs judgment would require international collection efforts and identified foreign enforcement as a practical recovery obstacle. DE 17 at 5–6. "Ignores" described Plaintiff's response to that stated issue. The Reply's further explanation therefore both rebutted the Opposition and elaborated on a cost driver already identified in the opening filing.

### D. The Reply Properly Answered Plaintiff's Bad-Faith Accusations.

Plaintiff devoted the final section of his Opposition to social-media posts, counsel's conduct, an extension request, and an accusation that the cost motion was filed in bad faith. DE 20 at 6–7. Section VI of the Reply responded that those collateral accusations do not determine collectability, residency, or the appropriate amount of security. DE 41 at 7–8. A party does not violate Local Rule 7.1(c)(1) by explaining why a subject raised by the opponent is immaterial.

## III. THE DISPUTED CHARACTERIZATIONS DO NOT JUSTIFY STRIKING THE REPLY

### A. The Prior Litigation Involved the Same Opposing Parties in Reversed Roles.

The opening Motion repeatedly described prior litigation "between these same parties" and attached the judgment. DE 17 at 1, 7, 12–13 & Ex. C. Plaintiff was the defendant and Defendant was the plaintiff in Australia; their roles are reversed here. Thus, "same opposing party" is more precise than the Reply's references to "the same defendant." Likewise, "successive litigation" describes the

chronological fact that this federal action follows the Australian action between the same two adverse parties; it need not mean that Plaintiff previously occupied the plaintiff's side of the caption. The imprecise procedural label neither created new evidence nor altered the security request.

### B. Plaintiff's Own Filed Materials Call the Entire AUD $990,945.57 the "Judgment Debt."

The Motion to Strike concedes that "the resulting total debt was approximately $990,945.57" AUD, but calls the Reply "grossly inaccurate" for using the phrase "approximately $990,000 AUD defamation judgment." DE 43 at 3-4. That accusation depends on a semantic distinction contradicted by Plaintiff's own docket submissions. The May 1, 2025 letter Plaintiff attached as Exhibit 6 to his original Complaint states that Plaintiff "is liable for payment of the total sum of $990,945.57 (the Judgment Debt)," then itemizes $390,446.58 in damages and interest and $600,498.99 in costs before again totaling the "Judgment Debt" at $990,945.57. Compl., Ex. 6, DE 1-1 at 33. Plaintiff's counsel then states: "Our client does not have the financial means to satisfy the Judgment Debt." *Id*.

Plaintiff used the same terminology in the August 11 Video. After explaining that he accepted the AUD $600,000 costs figure, he stated that "my total debt to Billy was $990,000" and that, "because I could not cover the judgment debt, I filed for voluntary bankruptcy." August 11 Video, at 11:50. Defendant agrees that "approximately AUD $990,945.57 total judgment debt arising from the Australian defamation proceeding" is the most exact formulation. But the amount, source, and combined nature of the obligation were disclosed; the Reply did not invent them. Plaintiff cannot transform his own counsel's defined term into a material falsehood by adopting a narrower label only after the Reply used substantially the same shorthand.

Defendant cites Exhibit 6 to the original Complaint only to identify the terminology and financial representations Plaintiff himself placed in the docket record and to rebut his assertion that the Reply fabricated them, not to prove or disprove the validity or amount of the underlying Australian claim. See Fed. R. Evid. 408(b).

### C. "Crusader," "Destroying," and "Punishing" Are Judicial Findings Already in the Record.

The challenged terms were not invented in reply. The Australian judgment found that Plaintiff acted as a "crusader" and described an "agenda of destroying Mr Mitchell's reputation and punishing him." Mitchell v. Jobst [2025] QDC 41, ¶¶ 532–533; DE 17, Ex. C at 113. The opening Motion quoted those findings when addressing the prior litigation and the equities. DE 17 at 12–13. Plaintiff's reliance on Aggarwal's "background and purpose" factor made that already-disclosed context responsive, whether or not Plaintiff chose to discuss it in his Opposition.

### D. Plaintiff's Categorical Assertion Ignores His Directly Relevant Statements Concerning Financial Capacity and Collectability.

Plaintiff's categorical assertion is materially incomplete and ignores his directly relevant statements concerning financial capacity and collectability. DE 43 at 3. The AUD $990,945.57 obligation discussed in his own materials consisted primarily of AUD $600,498.99 in litigation costs. Compl., Ex. 6, DE 1-1 at 33. Plaintiff nevertheless stated in the August 11 Video: "I do not have $990,000. In fact, I have no money"; "because I could not cover the judgment debt, I filed for voluntary bankruptcy"; and "Firstly, I don't have any cash." August 11 Video, supra, at 11:29--13:13. He later added that he had no "other recoverable assets," that "none of the money this channel earns will go to the trustee or Billy," and that "civil judgments and cost orders" would be discharged through bankruptcy. *Id*. at 24:43, 24:21, 24:34.

Plaintiff was still more direct later in the same pleaded video: "I advised Billy that I could not pay the judgment, and thus I would be declaring bankruptcy," and "the fact that I went bankrupt confirms I don't have the money to pay him." *Id.* at 27:28, 30:06. His counsel likewise represented that Plaintiff had "no assets or cash on hand," lacked the means to satisfy the defined Judgment Debt, and that further legal costs "will not be able to be recovered from our client." Compl., Ex. 6, DE 1-1 at 34. Those are express comments about his then-current inability to satisfy an existing judgment debt composed predominantly of costs.

The Reply did not purport to freeze Plaintiff's financial condition indefinitely or establish his ability to satisfy the precise amount of any future federal costs award. It drew a collectability inference from Plaintiff's express statements, ensuing bankruptcy, unsatisfied debt, and present assertion that he cannot post security. That inference is neither "materially false" nor "unsupported by any evidence." DE 43 at 3. Plaintiff cannot convert disagreement over the breadth of that inference into a claim that its factual foundation was invented. At most, the Court may understand "expressly disclaimed" as referring to Plaintiff's expressly stated inability to pay the existing judgment-related obligation and the resulting inference of substantial collectability risk here.

## IV. STRIKING THE ENTIRE REPLY WOULD BE DISPROPORTIONATE

The Amended Reply attached no new evidence and requested no relief beyond the security sought in DE 17. The challenged sections track the Opposition's organization and answer its principal arguments. Duplicating portions of the opening theory as necessary to explain a rebuttal is not the same as using a reply to introduce a new ground for relief. See *Intra-Lock*, 2015 WL 1268278, at *1–2.

Nor do isolated wording disputes justify striking all ten pages. The prior litigation involved the same adverse parties in reversed procedural roles. The approximately AUD $990,945.57 obligation is accurately described as the total judgment debt arising from the defamation proceeding, and that is the very defined term used by Plaintiff's counsel in Exhibit 6 to the original Complaint. Compl., Ex. 6, DE 1-1 at 33. Plaintiff also expressly stated that he could not pay that debt, had no money or recoverable assets, and expected civil judgments and cost orders to be discharged. If the Court nevertheless finds any shorthand imprecise, it may read "same defendant" as "same opposing party" and "approximately $990,000 AUD defamation judgment" as "approximately AUD $990,945.57 total judgment debt arising from the defamation proceeding." None of that supports Plaintiff's accusation that the Reply fabricated facts, much less the wholesale striking of the filing.

## V. CONCLUSION

**WHEREFORE**, Defendant respectfully requests that the Court DENY Plaintiff's Motion to Strike [DE 43]. Alternatively, if the Court determines that any isolated characterization identified above is imprecise or outside the permissible scope of reply, Defendant requests that the Court disregard only that language and otherwise consider the Amended Reply in deciding the Motion for Security for Costs.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of August 2026, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system or by email to all parties. I further certify that I either mailed the foregoing document and the Notice of Electronic Filing by first class mail to any non CM/ECF participants and/or the foregoing document was served via transmission of Notice of Electronic Filing generated by CM/ECF to any and all active CM/ECF participants.

*/s/Michele T. Mitchell*
Michele T. Mitchell
FLA. BAR NO. 1048843
***Counsel for Defendant***
***963 Azure Lane***
***Weston, FL 33326***
**954-658-0789**
**Primary Service:** michele@mtam.law
**Secondary Service:** billy@mtam.law

**SERVICE LIST**

**KARL JOBST**
**Pro Se Plaintiff**
32 Ventura Street
Pallara, QLD, Australia 4110
Phone : +61 432 597 334
karljobstgaming@gmail.com

______________________________

Michele T. Mitchell, Esq.
**Counsel for Defendant**
963 Azure Lane
Weston, FL 33326
954-658-0789
michele@mtam.law
billy@mtam.law